## Anna M. Pickford *vs.* Mayor & Aldermen of Lynn.

A. acquired title to land in a city while a petition was pending before the mayor and aldermen for the laying out of a way over it. B., who was A.'s "full agent in respect to " the land, was fully informed concerning the petition and the proceedings thereon, and, as owner in his own right of another lot of land on the same street, was served with a written notice under the Gen. Sts. *c.* 43, § 61, in respect to the same. The mayor and aldermen, no one of them knowing that A. had become owner of the land, adopted an order for the laying out of the way. *Held*, that the fact that A. had neither formal nor actual notice of the proceedings of the mayor and aldermen was no ground for the issue of a writ of *certiorari* to quash the same.

Under a statute which provides that the mayor and aldermen of a city," with the concurrent vote of the common council, shall have exclusive authority and power to lay out any street," if, in concurring with an order of the mayor and aldermen for the laying out of a street, the common council propose amendments of the order in matters incidental to and not modifying the location, with which amendments the mayor and aldermen agree, it is no ground for the issue of a writ of *certiorari* to quash the proceedings.

The St. of 1862, *c.* 203, gives no right to avoid the laying out of a way to any person except owners of land over which it is located whose damages remain not paid nor tendered two years after the date of such location.

Petition by the owner of land abutting on Munroe Street in Lynn for a writ of *certiorari* to quash proceedings of the respondents had for the purpose of widening the street and laying it out as a public way. At the hearing, before *Foster*, J., these facts appeared:

Munroe Street in Lynn, which was opened in 1843 as a private way, in 1853 was graded and ever afterwards repaired by the city, but not accepted as a public way until as hereafter recited. On February 5, 1866, several persons, Francis L. Proctor among them, petitioned the mayor and aldermen to widen the street by taking five feet of land on each side from the abutters. The petition was referred to the committee on streets; and, on March 29, 1866, eleven owners of land abutting on Munroe Street, including Proctor and most of the other petitioners, signed a paper waiving all claims for damages which might accrue to them respectively by reason of the widening, if the street should be made fifty feet wide by taking five feet from the abutters on each side in accordance with the petition, and assenting to such widening and to the laying out of the street as a public way without other or further notice.

On May 8, 1866, John B. Tolman, the petitioner's father bought from Proctor, and gave to the petitioner, Proctor's land on the street, and Proctor, by deed of full warranty, conveyed it to the petitioner, which deed was duly recorded May 21. From and after this purchase Tolman " had charge of the land for the petitioner and was her full agent in respect thereto ; " and at the time of the conveyance he was informed by Proctor of the agreement of the eleven land owners for waiver of damages and notice, which meanwhile had been deposited in the city clerk's office, and saw and read it there. Up to this time no hearing had been had on the petition.

On June 18, 1866, the committee on streets reported to the mayor and aldermen, and recommended the adoption of, an order laying out Munroe Street as a public way fifty feet wide with certain specified boundaries ; awarding damages to certain abutters who had not signed the agreement above named ; allowing ten years to some of these abutters to remove their buildings, " provided, nevertheless, that in case either of the above buildings should be destroyed by fire or be removed before the expiration of said term of ten years, then in such case the new buildings to be erected upon the aforesaid lots shall conform to the above described lines," and that, in the case of Theodore Attwill, " in event of his building being destroyed by fire within the time specified and before the removal thereof, then no award shall be paid to him ; " stipulating that " until the city enters upon and takes possession of the several lots of land for which damages are herein awarded no part thereof shall be paid ; and reciting that " as the widening of said street is believed to be advantageous to all the other abutters thereon, no damages are awarded " to them. In the location made in this order, a piece of the petitioner's land, from four to eight inches wider than five feet was included.

The city clerk was thereupon ordered to give notice to the abutters of a hearing before the board of mayor and aldermen for July 2, and accordingly, not less than seven days before that day, caused a notice to be left at the residence of Tolman, (who himself owned land abutting on the street,) addressed to him

personally, to the effect that it was proposed to lay out Munroe Street as a public way " over land belonging to you," and that the mayor and aldermen would meet for t⸢⸣e purpose of considering the subject on July 2 at a place and hour in the notice specified.   But the petitioner herself " had no actual notice of the intention of said mayor and aldermen to lay out such way as a public street, and neither she nor said Tolman was present at the hearing, nor was there any waiver by him or her of her legal rights, except such as may be inferred from the facts " recited in this report.

At the time and place specified in the notice, the order reported by the committee was adopted by the mayor and aldermen and sent to the common council for concurrence.   On August 23 that body amended it by specifying, in the case of another abutter, that his buildings should " be allowed to remain in their present position until the expiration of his present lease, unless the same be sooner destroyed by fire or otherwise removed," and " by changing the term of ten years to five years in all places as the time for the removal of the other buildings named; " and on the same day the mayor and aldermen concurred in the amendments.

" Before the adoption, as aforesaid, of the order for laying out said street, neither the petitioner nor the said Tolman had informed the mayor and aldermen of the conveyance from said Proctor to her, nor had any member of said board been informed thereof by any person.   But the said Tolman had several unofficial conversations with the mayor and other members of the board in relation to the laying out of said street."

On December 9, 1867, after the filing in court of this petition, the two branches adopted an additional order, rescinding that paragraph of the former order which provided that, until the city should enter upon and take possession of the several lots of lana or which damages were awarded, no part thereof should be paid.

The case was reported for determination by the full court.

*W. Howland,* for the petitioner.   1. The order was illegal and void.   The petitioner had no 'egal notice of intention to lay out

the way. The notice to Tolman was addressed to him person ally, and expressly states intention to lay out a way over his land, not over hers; and he owned land on the street to which the notice was in all respects applicable. Even if it had been addressed to her, not to him, it was not served, touching her, in the manner required by law. Gen. Sts. *c.* 43, § 61. As power to take private property for public uses must be strictly pursued, these objections are decisive, unless there was an implied waiver. *Harbeck* v. *Toledo*, 11 Ohio State, 219.

There are two classes of cases in which the statute has been held to have been waived; when the party whose interests were affected has been present at the hearing and made no objection; or when he has been guilty of laches in remaining silent until large expenses or liabilities have been incurred. It will hardly be contended that this case comes under either. Nor can Proctor's agreement be operative as a waiver by the petitioner. It was on condition that only five feet in width of his land should be taken, which was not complied with. And even had it been sufficient as a waiver by him, his grantee would not be bound by it. It was only a waiver of notice to him, and of any claim he might personally make for damages; and was not assented to or adopted by the petitioner or her agent. The conveyance to her was by deed without reservation, duly recorded more than three months before the passage of the order. This distinguishes the case from *Brown* v. *County Commissioners*, 12 Met. 208. And it would seem that even a reservation in the deed would not have rendered unnecessary a legal notice to the petitioner. *Howard* v. *Hutchinson*, 1 Fairf. 335. Nor can it be held that Tolman's "unofficial conversations with the mayor and other members of the board, in relation to the laying out of said street," nor the knowledge by Tolman of Proctor's agreement, constituted any waiver by the petitioner. The fact that the consideration of the conveyance of the land was paid by Tolman does not change the aspect of the question. The land was equally hers, and all her rights in respect thereto were the same as if the consideration had been paid by herself.

2. The laying out was not by the mayor and aldermen, with

the concurrent vote of the common council. Under the St. of 1861, *c.* 107, which provides that "the mayor and aldermen of the city of Lynn, with the concurrent vote of the common council, shall have exclusive authority and power to lay out, alter and discontinue any street or town way," the common council have no power to amend an order laying out a street or town way. The only power of the common council is of concurrence or nonconcurrence. If they have power to amend in any, they have in every, particular; and, if so, they have power which is intended to belong exclusively to the mayor and aldermen. *Kean* v. *Stetson,* 5 Pick. 492.

3. By postponing the time when possession could be taken of part of the land over which the street was laid out for a period of five years from the passage of the order, it was impossible that the laying out could be valid. St. 1862, *c.* 203. The order of December 9, rescinding part of the original order, does not avoid the difficulty. The damages awarded have not been paid nor can be legally paid until the land has been taken possession of for a street, any more since the rescission than before. Gen. Sts. *c.* 43, § 63. Nor can such possession be taken until five years from the passage of the order, unless the buildings are destroyed by fire or removed, a contingency which the court cannot here consider. The rescinding order is a transparent attempt to evade the operation of the statute. Had it been passed before the filing in court of this petition, and were it legal to make a present payment of the damages awarded, how shall the amount of damages be determined in the case of Attwill? His is only a conditional award, payable in the contingency that his building is not burned within five years; so that it cannot be determined until the end of that time whether he is to receive any award, unless his building is burned down sooner.

*T. B. Newhall,* for the respondents.

WELLS, J. The first objection alleged against the legality of the proceedings of the mayor and aldermen is, that the petitioner was not notified of their intention to lay out the street. It appears that no formal notice was served upon her, and she had no actual notice of the intended laying out of the street. But

it also appears that she acquired her title after the commencement of the proceedings; that the mayor and aldermen had no knowledge of this change of title; that Tolman, her father, purchased the land for her, had charge of it, and "was her full agent in respect thereto;" and that Tolman was fully informed of all the proceedings, had formal notice to himself as one of the abutters, and held "several unofficial conversations with the mayor and other members of the board in relation to the laying out of the street." This is, substantially, notice to the petitioner, and is a sufficient answer to her complaint. If formal notice, addressed to the petitioner, had been left with Tolman as her agent, it would have been sufficient, although never communicated to her personally. Yet Tolman had all the information which such a notice would have given him. The writ of *certiorari* is given to prevent manifest injustice, and not to enable a party to avoid the proceedings of an inferior tribunal for technical errors. *Stone* v. *Boston*, 2 Met. 220. The petition is addressed to the sound discretion of the court; and, even when formal errors exist, the writ will be refused if no wrong or substantial injury is occasioned thereby to the petitioner. When the failure to give notice is without fault on the part of the tribunal acting in the laying out of the way, and is occasioned by want of knowledge of a title acquired during the pendency of the proceedings, it would be unfair and injurious to the public interests if such omission were to be held as fatal to the whole proceedings.

The second objection is, that the street was not laid out by the mayor and aldermen with the concurrent vote of the common council, in accordance with the St. of 1861, c. 107. This objection is founded upon the fact, that, in concurring with the action of the mayor and aldermen, the common council adopted certain amendments, which were afterwards agreed to by the mayor and aldermen; whereas the argument of the petitioner is, that no action of the common council is proper except to agree or disagree to the propositions sent to them from the mayor and aldermen. We do not think the statute is to be construed thus strictly. The purport of it is, that all proceedings for the laying out of ways must originate and be first acted on by the mayor

and aldermen. But if the concurrence of the common council be accompanied with proposed modifications, not of the location, but in matters incidental to it, and such modifications be agreed to by the mayor and aldermen, we cannot think that such action should operate to invalidate the whole proceedings. It is urged that this would enable the common council to assume the control of the location of streets, which the statutes intend shall be exercised exclusively by the mayor and aldermen. But they may do this, if they see fit, equally well by the exercise of their simple negative upon the action of the mayor and aldermen, until the location and all the orders connected therewith are made to conform to the views of the common council. On the other hand, the mayor and aldermen may prevent any such direct interference with their action, by refusing to agree to the modifications proposed. In either mode, the common council, having the power to defeat all action, may assume to exercise discretion and authority not intended to be intrusted to them. The argument from possible consequences, therefore, is without force.

In this case all the proceedings relating essentially to the laying out of the street originated in the board of mayor and aldermen. The modifications proposed by the common council affected only the time to be allowed for the removal of buildings. The petitioner is not interested in those buildings, and it does not appear that her rights are in any respect affected by the modifications so made. Whether they were properly made or not, we do not think they afford any sufficient ground for the petitioner to claim this writ.

The third ground is, that the record of the laying out of the street is invalidated by its own provisions in regard to the removal of buildings, and the time limited for the payment of damages. Five years were allowed certain abutters within which to remove buildings that were upon the strip of land taken to widen the street, unless previously destroyed by fire; and, in case of one of the abutters, the damages were awarded him upon condition that they were not to be paid in the event of his building being destroyed by fire within the time and be-

fore removal. By the Gen. Sts. *c.* 43, §§ 14, 63, it is provided
that "the damages awarded shall not be paid until the land is
entered upon and possession taken for the purpose of construct-
ing the way." The St. of 1862, *c.* 203, provides that the laying
out "shall be void against the owner of any land over which
the same shall be located, unless within a reasonable time, not
exceeding two years after the same shall have been laid out or
altered, possession shall be taken of such land for the purpose
of constructing such highway," &c., "or the damages awarded
the owner of the land shall be paid or tendered." The peti-
tioner contends that the laying out is wholly void, because, un-
der the order of the city council, no possession, for the purpose
of constructing the way, can be taken of the land covered by
the buildings within two years; and, under the provisions of
the General Statutes, no payment or tender of the damages
awarded can be made until such possession is taken. It was
suggested in *Shaw* v. *Charlestown,* 3 Allen, 538, that the provis-
ions of the Gen. Sts. *c.* 43, §§ 14, 63, do not apply to cities.
But § 81 of the same chapter was probably overlooked; and, as
that case did not depend upon the General Statutes, we are not
disposed to decide this case upon that ground. We are inclined
to the opinion that the St. of 1862, *c.* 203, so far modifies the
provisions of the General Statutes as to authorize the payment
of damages, in order to secure the public right from being de-
feated, where the possession is delayed for any cause not imply-
ing an abandonment of the way. But in this case the damages
to be paid to one of the abutters are not fixed, and cannot be
ascertained until the expiration of five years, unless the building
should be previously destroyed by fire or voluntarily removed by
the owner. It is necessary, therefore, to determine the force and
effect of the St. of 1862, *c.* 203. Previously to the St. of 1842,
*c.* 86, and the St. of 1847, *c.* 259, the landowner might recover
his damages immediately upon the adjudication establishing the
way, although no road should ever be constructed and no pos-
session ever taken for the public use. After those statutes, and
under the General Statutes, the way could be established and
remain indefinitely subject to the right of the public at any time

to enter and construct a road, and thus the landowner be deterred from any beneficial occupation of the land, while he was also deprived of his damages until actual entry for the purpose of constructing the road. This seemed to operate unjustly upon the landowner, as it subjected his land to a *quasi* servitude for an unlimited period without compensation. The evident purpose of the St. of 1862, *c.* 203, is to secure to the individual landowner either the payment of his damages or a release of his land from the servitude within a reasonable time. Hence the language of the statute, which declares that the laying out, &c., " shall be void as against the owner of any land over which the same shall be located," unless " possession shall be taken of such land," &c. No one but the owner of such land can avail himself of the statute to avoid the location of the way. Even against him, the laying out is valid until the time fixed by the statute has expired ; and he may not choose to avail himself of his right afterwards to avoid it. If it were otherwise, and the statute were held to make the laying out void as to every one, as well as against the landowner affected, yet the petitioner would have no right to have it vacated now. The two years have not expired ; and it is not impossible that the buildings may be removed or destroyed by fire within the period, or that some different mode of compensation may be agreed on and accepted, so that all the conditions of the statute will be complied with. It is undoubtedly in the power of the city council to rescind their order which postponed payment beyond the two years.

In this view of the case it is unnecessary to consider the agreement of Proctor and others to waive all claim for damages and notice of laying out.                    *Petition dismissed.*