JUSTIN H. MCCARTHY (afterwards CAROLINE S. MCCARTHY, administratrix) *vs.* COMMONWEALTH.

Suffolk. December 6, 1909. — January 20, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Public Officer. Evidence,* Presumptions and burden of proof, Inferences. *District Police. Notice. Governor. Civil Service.*

The removal from office of a public officer is not accomplished usually merely by the signing by one empowered to remove him of a paper stating such removal, but it also is necessary to give some notice to the officer of his removal, and, where the mail is employed for the conveyance of such notice, the removal cannot be said to have occurred at a time previous to the time when the letter was deposited with the carrier.

The statutes which relate to the removal from office of members of the district police of the Commonwealth, R. L. c. 108, § 1, as amended by St. 1904, c. 318; St. 1904, c. 314, as amended by St. 1905, c. 243; St. 1906, c. 210, as amended by St. 1907, c. 272, while they provide for a notice from the Governor of his intention to remove such an officer from office, do not prescribe the length of time which should elapse after such notice before the removal takes place; but such time should elapse as, under all the circumstances, is reasonable.

There is a presumption in favor of the validity of the acts of the chief executive of the Commonwealth, and every reasonable inference is to be drawn in favor of such validity.

A member of the district police of the Commonwealth, upon going to his office, which was in Springfield, at ten o'clock in the morning of a Saturday, received a letter from the Governor notifying him that the Governor proposed to remove him from office for the good of the service. Enclosed in the letter were specifications of reasons for removal which, if found to be true, would have been sufficient ground for removal and which were styled " grave offenses," and were stated to be of such a nature as to warrant the speedy removal of the officer. The letter was dated at Boston on Thursday and bore the Boston postmark of Friday at 11 A. M. After receiving the letter, the officer finished the routine work of his office and at 11.30 A. M. went to his home and discussed the contents of the letter with his wife and an aunt. In the afternoon he attempted to reach the Governor's office by telephone, but was unsuccessful because the office was closed on Saturday afternoons. On Monday morning he arrived in Boston at 11.40 A. M., went to the home of his spiritual adviser in the West Roxbury district, and was advised by him not to see the Governor until the next morning. On Tuesday morning between ten and eleven he went to the Governor's office with a letter from his spiritual adviser requesting a " personal interview," was unable to see the Governor, but was referred by the Governor's secretary to the chief of the district police, who informed him that he had been removed from his office and that the notice had been sent to Springfield. Such notice was contained in a letter signed by the Governor, dated Monday, which was delivered to the chief of the district police by a messenger, and was by him forwarded to Springfield by a letter postmarked at Boston at 1 P. M. on Tuesday. *Held,* that

under all the circumstances it could not be said that the Governor did not give to the officer notice of his intention to remove him a reasonable length of time before his removal.

PETITION filed in the Superior Court by Justin H. McCarthy on May 11, 1908, under R. L. c. 201, as amended by St. 1905, c. 370, for $500 alleged to be due to him as salary as a member of the boiler inspection department of the Massachusetts district police for the period from January 6 to May 6, 1908.

While the petition was pending, the petitioner died and Caroline S. McCarthy, having been appointed administratrix of his estate, was admitted as petitioner to prosecute the petition.

In the Superior Court the case was heard on an agreed statement of facts by *Dana*, J., without a jury, who found for the respondent. The petitioner appealed. The facts are stated in the opinion.

*F. S. Goodwin*, (*E. L. Dresel* with him,) for the petitioner.

*D. Malone*, Attorney General, *&* *F. T. Field*, Assistant Attorney General, for the Commonwealth.

RUGG, J. This is a petition under R. L. c. 201, as amended by St. 1905, c. 370, to collect money alleged to be due for the salary of the present petitioner's intestate. The facts upon which the decision must rest are these : Justin H. McCarthy was, previous to January, 1908, a member of the district police. By a letter dated January 2, 1908, postmarked at Boston at half after eleven o'clock in the forenoon of January 3, and actually received by McCarthy when he reached his office in Springfield at ten o'clock of the following morning, which was Saturday, he was notified that the Governor proposed to remove him from office for the good of the service. Specifications sufficient in form were enclosed, which stated the grounds of removal. The specifications are not set out in the record but they are described as " grave offenses."

The petitioner's intestate, after the receipt of the Governor's letter, finished the routine business of his office, and at half past eleven went home, where he consulted with his wife and aunt about the contents of the letter. In the afternoon he attempted to telephone to the Governor's office at the State House, but found that it was closed for the day. On the following Monday morning, at a quarter past nine o'clock, he left Springfield

by train for Boston, where he arrived at forty minutes after eleven. He then went to the home of his priest in West Roxbury, with whom the Governor's letter was discussed, and on the next morning received from him a letter directed to the Governor, which requested in behalf of the petitioner's intestate a " personal interview." For the first time after receiving the letter from the Governor the petitioner's intestate then went to the State House, reaching there between ten and eleven o'clock in the forenoon of Tuesday, and after waiting was informed that the Governor was busy and could not see him, but upon conference with his secretary was referred to one Whitney, the chief of the district police. He went immediately to the office of Whitney in the State House who informed him that he had been removed by the Governor, and that notice had been sent him at Springfield. This notice was dated January 6, was sent by messenger to the office of Whitney, by whom in a letter postmarked at Boston at one o'clock in the afternoon of Tuesday, January 7, it was forwarded to the petitioner's intestate at Springfield. The time which elapsed, therefore, from the receipt of the Governor's first letter by the petitioner's intestate to the time when the letter of removal left the custody of Whitney, not counting the Lord's day, was not less than forty-eight hours. The time must be reckoned at least up to the hour when the letter of removal was deposited in the mail. Although the appointment of an officer may take effect from the moment of signing and sealing the official commission by the appointing power (*Marbury* v. *Madison*, 1 Cranch, 137, 157, 160), something more than a mere signing of a paper stating removal is usually necessary to deprive one of an office. Some sort of notice to the officer is requisite, and this cannot be said to have been given earlier, when the mail is employed, than the deposit of the letter with the mail carrier.

From the receipt of the notice of removal on January 7 to January 20, 1908, the petitioner's intestate deliberated with his spiritual adviser and family and friends as to what steps could be taken to induce the Governor to reconsider his action in making the removal, and on January 17, with his wife, he had an interview with the Governor on this subject. On January 20, for the first time he consulted counsel, who a few days later

had a conference with the Governor (after the latter had received a stenographer's report from the chief of the district police), and later submitted a statement in behalf of the petitioner's intestate. Subsequently the counsel was informed by the Attorney General that the matter must be settled in court. Thereafter mandamus proceedings were instituted to reinstate Justin H. McCarthy in his office as member of the district police, but he died before a final decision.

The petitioner's intestate held office during good behavior by appointment of the Governor, who had the power to remove him for just cause and for reasons specified in writing, but who was required to notify him of the proposed action. The statute further provides that the officer "shall, if he so requests in writing, be given a public hearing, and be allowed to answer the charges preferred against him either personally or by counsel," but it does not prescribe the length of time for giving notice, as does R. L. c. 19, § 23, as amended by St. 1905, c. 150; R. L. c. 108, § 1, as amended by St. 1904, c. 318; St. 1904, c. 314, as amended by St. 1905, c. 243; St. 1906, c. 210, as amended by St. 1907, c. 272. A reasonable notice was therefore required. *Ransom* v. *Boston*, 196 Mass. 248, 252.

The only question presented is whether the petitioner's intestate received notice of the intention of the Governor to make the removal a reasonable time before the final action was taken. It is to be noted that we are reviewing the acts of the chief executive of the Commonwealth, a co-ordinate department of government. He must be assumed to be acting with the same desire to conform to laws as the other branches of government. Every reasonable inference and presumption are to be drawn in support of the validity of the acts of the chief executive as well as of the legislative branch of government. It is only when his act is clearly repugnant to the requirements of law that it is to be pronounced illegal. The action of the Governor in this instance must be tested by the circumstances under which it was performed. Information of such a nature was presented as seemed to him to justify charges of "offenses so grave," (to quote the words of the priest and friend of the intestate,) "that, if truly established would warrant his speedy dismissal." From the record in the mandamus proceedings brought in this court

by the petitioner's intestate, it appears that the charges were of misconduct of such a nature as called for an instant termination of his connection with that office. These offenses were charged against one whose official obligation required him to see to the enforcement of the law. It became at once the duty of the Governor, while proceeding with justice, to act with urgent despatch. He could not properly delay to purge the public service. While the civil service laws are designed to free competent and upright public servants from the fear of arbitrary removal, they are not to be so interpreted as to shield the inefficient or unworthy from a severance of the relation to which they have proved faithless. All that the Governor was required to do was to give to the incumbent of the office reasonable notice to say whether he desired a public hearing touching the grounds alleged for removal. Specifications like those here in question impose corresponding alertness of action on the official, against whom they are made. Naturally the innocent would be stung with such a sense of injury as would impel him to demand an immediate opportunity to demonstrate his integrity. What is reasonable time in any case must be determined with reference to the thing to be done in view of all the attendant circumstances. The situation confronting both the Governor and the petitioner's intestate was such that the latter as a reasonable man must have known required promptness of action. Nevertheless, after receiving the notice of the intention to sever official relations, he waited an hour and a half to perform routine official duties. He did not communicate by letter with the writer of the notice, nor did he consult with any attorney. The letter from the Governor was not in the nature of a charge against him from a stranger. It was a communication from the superior, who had appointed him to office. It would have been simple and natural to have answered it at once with a denial and request to be confronted with the evidence. On Monday, when he went to Boston, he did not seek an interview with the Governor, but conferred with a friend, who had recommended him for appointment. For such an interview there was ample time, if he had acted with due insistence, on the Saturday on which he received the notice. He was in the city, in which was the office of the Governor, substantially one whole business day without

trying to see him.  There are many acts affecting property rights
and personal liberty, which are required, either by statute or
customary law, to be performed within forty-eight hours or less
from the receipt of information.  See for example R. L. c. 123,
§ 33 ; c. 173, § 97 ; c. 219, § 22; c. 100, § 84; *Weiner* v. *Went-
worth,* 181 Mass. 15; R. L. c. 212, § 83, c. 75, § 80 ; *Pratt* v.
*Farrar,* 10 Allen, 519 ; *Arnold* v. *Nash,* 126 Mass. 397 ; St. 1907,
c. 560, § 139.  Moreover, none of the intestate's conduct indi-
cated a desire for a public hearing touching the charges pre-
ferred against him.  The letter of his friend only suggested a
" personal interview."

The result is that, although the case is a close one, yet under
all the circumstances it cannot be said that reasonable notice was
not given to the petitioner's intestate of the intention of the
Governor to remove him before the removal was made.

In view of the ground upon which the decision is rested, it is
not necessary to determine whether title to office can ordinarily
be tested in such a proceeding as this.

*Judgment affirmed.*