ALBERT WHITNEY *vs.* JUDGE OF THE DISTRICT COURT OF NORTHERN BERKSHIRE.

Berkshire.    September 17, 1929. — May 28, 1930.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Certiorari. Practice, Civil,* Certiorari proceedings: return. *District Court,* Review of removal under civil service. *Civil Service. Police Officer,* Removal.

It was not the legislative intent that the provisions of § 42B, added to G. L. c. 31 by St. 1923, c. 242, § 1, that the decision of a district court upon a petition by a police officer for a review of a decision removing, suspending, transferring or lowering him in rank or compensation "shall be final and conclusive upon the parties," should deprive parties of the beneficent remedy afforded by the extraordinary writ

of certiorari if there are substantial errors of law apparent on the record adversely affecting their material rights. Per RUGG, C.J..

The design of the civil service law is to free competent and upright public servants from arbitrary removal but not by the requirement of insubstantial formalities to shield the inefficient or unworthy from being separated from the public service. Per RUGG, C.J.

The chief of police of North Adams in a communication in writing to the mayor made twenty-two specific charges against a police officer, alleging illicit traffic in intoxicating liquors, immoral conduct with women and violation of police rules. The mayor served upon the officer a communication showing by its heading that it was official, and stating as follows: "Dear Sir: I contemplate removing you from office as one of the Police Officers of the City of North Adams, Saturday, October 13, 1928, at two o'clock in the afternoon for the following reasons. M. C., the officer in command of the Police Department in a letter to me of this date makes the following charges against you: [there followed the twenty-two specific charges contained in the communication from the chief of police]." The police officer did not attend at the office of the mayor at the date and hour stated in the letter. The mayor and chief of police together went over the charges. Each personally had examined witnesses as to some of them. The chief of police was ready to produce witnesses to support the charges. He had personal knowledge as to many of the facts stated in his communication to the mayor. Thereafter the mayor informed the officer that he was removed from office. The officer then filed in the appropriate District Court a petition for review under § 42B, added to G. L. c. 31 by St. 1923, c. 242, § 1. At the hearing by the judge of the District Court only the mayor and the chief of police testified. The judge found the foregoing facts; stated that although the notice given to the petitioner by the mayor was informal and "clearly should have stated that a hearing upon the charges filed would be held at a definite time and place," yet because that notice contained charges accusing him of twenty-two distinct and grave derelictions of duty, he must have realized the seriousness of the matter and that it was reasonable to infer that he knew from this notice that the mayor contemplated consideration of action upon these charges at his office at the city hall at the hour named in the notice; found that the removal was justified, and affirmed it. A petition for a writ of certiorari was ordered dismissed "as a matter of law and as a matter of discretion." The petitioner alleged exceptions. *Held,* that

(1) So far as the statements of the judge of the District Court relating to the notice given to the petitioner by the mayor were findings of fact, they were not open to review;

(2) In the circumstances the inference was permissible that the petitioner had just cause to believe that at the time and place mentioned in the notice the mayor intended to do whatever was necessary as a prerequisite to his removal, provided a finding was made after hearing that the charges specified in the notice were sustained;

(3) The judge of the District Court made no erroneous ruling of law on the question of notice;

(4) It was not essential that the hearing before the mayor should be according to strict evidentiary procedure provided substantial justice was done;

(5) The petitioner had no genuine right to remain or to be reinstated as a police officer; and, in such circumstances, the judicial discretion of the single justice was rightly exercised in refusing to put forth the extraordinary power of the court in favor of the petitioner.

PETITION, filed in the Supreme Judicial Court for the county of Berkshire on February 13, 1929, for a writ of certiorari to quash proceedings before the judge of the District Court of Northern Berkshire upon a petition to review action by the mayor of North Adams in removing the petitioner as a police officer, to reverse an order by the judge affirming the action of the mayor, and to reverse the action of the mayor.

An order of notice was issued notifying "the respondent to appear before" the court "that he may then and there show cause, if any he has, why the prayer of said petition should not be granted."

In response to such order of notice, the respondent filed what he certified was "a true copy of the complete and extended record of" his court in the matter of the petition for review. Material facts appearing from such record were as follows: Previous to October 13, 1928, the petitioner was a police officer of North Adams under civil service. On October 9, 1928, Michael W. Conlon, chief of police of North Adams, filed with the mayor in writing twenty-two specific charges of dereliction of duty, which included charges of illicit traffic in intoxicating liquors both while on and while off duty, violation of police rules, and immoral relations with women. On the same day the mayor caused to be served upon the petitioner a letter, bearing the heading, "CITY OF NORTH ADAMS MASSACHUSETTS OFFICE OF THE MAYOR" and a representation of the seal of the city, and reading as follows: "Dear Sir: I contemplate removing you from office as one of the Police Officers of the City of North Adams, Saturday, October 13, 1928, at two o'clock in the afternoon for the following reasons. Michael Conlon, the officer in command of the Police Department in a letter to me of

this date makes the following charges against you: [there followed the specifications of charges contained in the letter of the chief of police and described above]."

The extended record continues:

"The respondent, Mayor Johnson, and Michael Conlon, the chief of police, were the only witnesses who testified and from their testimony the court finds the following facts:

"The respondent, as mayor of the city of North Adams, has an office at the city hall in North Adams and he arrived at this office on the afternoon of October 13, 1928, at about 1:55.  Two or three moments later the chief of police, Michael Conlon, and the city solicitor, Mr. P. J. Ashe, arrived at the mayor's office.  They remained there until about 2:20 P.M.  The petitioner did not appear either in person or by counsel.  No witnesses were present other than Chief Conlon.  At 2:06 o'clock P.M., the mayor, the chief and city solicitor compared watches and found the time to be six minutes past two o'clock.  The mayor then went into the city treasurer's office adjoining to verify the time and returning said 'Well he isn't here.  He's done,' referring to Mr. Whitney the petitioner.  The city solicitor then said to Chief Conlon, 'You and the mayor should go over these charges in a formal way.'  Chief Conlon testified that he then said to the mayor, 'I have talked these charges over with you several times before today.  You have talked with some of the witnesses yourself.  The first witness, Gardner, is dead, but I find that I am able to present his testimony. I am ready to get my witnesses and prove these charges to be true in case Mr. Whitney should appear.'  The mayor then said: 'The evidence presented here warrants my discharging this man,' referring to the petitioner.  These were all the proceedings at this meeting.

"The mayor and chief of police both testified to various conversations they had held together concerning these charges during approximately a month preceding the date of removal in which the chief had from time to time told the mayor information he had received from others concerning each of the several charges and gave him the source of his information and the names of the parties from whom he

had received such information. During said period the mayor had personally interviewed some of the witnesses who had furnished information to the chief and they had corroborated the information previously given to the chief concerning the charges against the petitioner.

"The facts alleged in charge one were related to the chief by one Alonzo Gardner at the office of City Solicitor P. J. Ashe and reported by the chief to the Mayor. Alonzo Gardner died early in October, 1928, before October 13.

"The twelfth charge alleges violation of § 4 of Rule 5 of the rules and regulations of the police department, which section is as follows: '4. Patrolmen must not walk together or talk with each other, or with any other persons on their route while on duty, unless it be to communicate information pertaining to the department or in the line of their duty, and such communication must be as brief as possible. They must not remain in one spot but constantly patrol their routes.' Chief Conlon testified that from his own observation he had knowledge of the violation of this rule on several occasions by the petitioner, and had so reported to the mayor.

"Mayor Johnson testified with reference to [certain] charges . . . pertaining to sales of liquor by the petitioner and his giving a drinking party at his residence; that he had personally interviewed witnesses who had furnished information of these facts to Chief Conlon, and that these witnesses with whom he was personally acquainted had informed him of the facts as alleged in these several charges.

"The facts alleged in the other charges came from statements made to Chief Conlon by various persons claiming to have personal knowledge of such facts, and by Chief Conlon reported to the mayor from time to time at their several conferences pertaining to these charges.

"None of the foregoing statements of fact were made by any of the parties under oath and no witnesses were sworn who furnished the information to the chief of police or mayor concerning the charges alleged.

"I find that the facts stated by the various persons interviewed by the chief of police and by the mayor, if properly proven at a hearing held for the purpose of which the peti-

tioner had due notice in accordance with provisions of the statute, would have amply justified the removal of the petitioner by the mayor.

"The statute under which this petition is brought provides that the court 'shall review such action, hear any or all of the witnesses and determine whether or not upon all the evidence such action was justified.'

"In the construction of this statute our courts have held that the proceedings in the District Courts are confined strictly to a review of the action of the removing authority, and not a new trial of the questions involved as if it were an appeal. The statute means that the question to be decided in each case is whether the entire action of the removing officer or board was justified, and that justified in this connection 'means done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.' . . .

"Section 42A of G. L. c. 31 provides that 'Every police officer holding an office classified under the civil service rules, in any city except Boston . . . shall hold such office continuously during good behavior and shall not be removed . . . except after a full hearing of which he shall have at least seventy-two hours written notice with a statement of the reasons for the contemplated removal.'

"The questions therefore presented by the petitioner for adjudication are whether the removal of the petitioner by the mayor was done 'after a full hearing' within the meaning of the statute, and whether the action of the mayor in removing the petitioner was justified in the sense that it was 'done upon adequate reasons sufficiently supported by credible evidence when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.'

"The statute above quoted provides that a police officer cannot be removed 'except after a full hearing of which he shall have at least seventy-two hours written notice with a statement of the reasons for the contemplated removal.'

"The contention of the petitioner is that the papers served upon him October 9, 1928, was not a notice of a

hearing as contemplated and required by the above statute. It is true that in its specific terms it did not state that a hearing was to be held, or the place of such hearing, but it did state that at a certain time the mayor of the city contemplated his removal.

"The petitioner had full knowledge that the mayor's office for the transaction of public business was at the city hall and he must be presumed to have known the law entitling him to be heard in his own defense and to examine witnesses produced against him. The notice was informal and clearly should have stated that a hearing upon the charges filed would be held at a definite time and place, but the notice contained the charges, twenty-two in number, accusing him of twenty-two distinct instances of dereliction of duty, and he must have realized the seriousness of the matter. It is reasonable to presume that the petitioner knew from this notice that the mayor contemplated consideration of and action upon these charges at the mayor's office at city hall at the hour named in the notice. Any feeling which he might have had that the mayor was prejudiced against him was no excuse for not appearing for the purpose of his defense, as the whole proceeding was open to review by the court upon his application if he should feel that the mayor's action was based upon prejudice and not justified by the evidence. Having failed to appear personally or by counsel he waived his right to present evidence in his own behalf and to examine witnesses produced against him.

"The chief of police testified that he was ready to produce at the hearing the witnesses to substantiate the charges preferred and so stated to the mayor at the hearing. The petitioner not appearing at the time stated in the notice thereby waived the right to meet the witnesses, hear their testimony and subject them to cross-examination, and it would have been but an idle gesture for the mayor and the chief of police to have reëxamined the witnesses at that time in the absence of the petitioner. The chief of police had previously examined all the witnesses and informed the mayor of their testimony regarding the charges. The

mayor had also interviewed many of the witnesses personally and received their direct statements in substantiation of the charges, and the chief of police himself had personal knowledge of certain of the offences charged, of which he had informed the mayor.

"There is no legal requirement that evidence received by an executive or administrative officer in dealing with charges preferred against a subordinate should be taken under oath or with any particular formality.

"It must be remembered that this proceeding is but a review of the action of an executive or administrative officer, though the act of removal itself may partake to some extent of a judicial character, and the proceedings are not to be measured or controlled by the same degree of formality that would be required to sustain charges of a criminal offence. To require such formality in administrative proceedings would unduly hamper the exercise of executive and administrative functions necessary for the public good, and executive and administrative officers are not selected with a view to their judicial qualifications. The review must be conducted with the underlying principle in mind that an executive action, presumably taken in the public interest, is being examined.

"The evidence shows there was information furnished the mayor from sources which he considered reliable, which amply justified his finding the charges sustained to such an extent as to warrant the removal of the petitioner, and the petitioner's failure to appear in his own defense warrants inferences unfavorable to his interests.

"I therefore find that the action of removal complained of was justified and is hereby affirmed."

The petition was heard by *Sanderson*, J., upon the petition and the record extended and certified by the respondent, and he directed the entry of an order "that the petition be, and the same is hereby, dismissed as a matter of law and as a matter of discretion." The petitioner alleged exceptions.

Section 42A, added to G. L. c. 31 by St. 1923, c. 242, § 1, and amended by St. 1925, c. 220, § 2, reads as follows:

"Every police officer holding an office classified under the civil service rules, in any city except Boston or in any town, whether for a definite or stated term or otherwise, shall hold such office continuously during good behavior and shall not be removed nor, except as otherwise provided herein, be suspended or, without his consent, be transferred from such office, nor shall he be lowered in rank or compensation, nor shall his office be abolished, except after a full hearing of which he shall have at least seventy-two hours' written notice, with a statement of the reasons for the contemplated removal, suspension, transfer, lowering in rank or compensation, or abolition of office, and except upon a written order stating fully and specifically the causes therefor made after a hearing as aforesaid and signed by the board or officer before whom the hearing is held. Such a police officer may, however, be temporarily suspended without such notice when necessary as a matter of police discipline, but only for just cause and for reasons specifically given him in writing within twenty-four hours after such suspension. If within three days thereafter the police officer so suspended shall so request in writing he shall be given a public hearing in not less than three nor more than fourteen days after the filing of the request. Any hearing under this section shall, if the police officer so requests in writing, be public and shall be held before the officer or board having power of appointment and removal. Any such hearing may be continued from time to time, if said board or officer and the police officer concerned agree thereto. At any such hearing charges shall be made by the officer in command of the department or of the district where the police officer is on duty or by any person designated by the official in command of the department, and the police officer concerned shall be allowed to answer the charges preferred against him, either personally or by counsel. Said police officer shall be notified in writing, within three days after the hearing, of the decision at such hearing. A copy of the reasons, notice and answers and of the order of removal, suspension, transfer, lowering in rank or compensation, or abolition of office shall be made a matter of public record."

Section 42B, added to G. L. c. 31 by St. 1923, c. 242, § 1, reads as follows:

"Within thirty days after a hearing provided for by the preceding section, the police officer who was removed, suspended, transferred, or lowered in rank or compensation, or whose office was abolished, may bring a petition in the district court of the judicial district where such police officer resides, addressed to the justice of the court, praying that the action of the officer or board in removing, suspending or transferring him, or lowering him in rank or compensation, or abolishing his office, may be reviewed by the court, and after such notice to such officer or board as the court deems necessary, it shall review such action, hear any or all of the witnesses and determine whether or not upon all the evidence such action was justified. If the court finds that such action was justified, the decision at the hearing shall be affirmed; otherwise it shall be reversed and the petitioner shall be reinstated in his office without loss of compensation. The decision of the court shall be final and conclusive upon the parties."

*E. D. Getman,* (*M. E. Couch* with him,) for the petitioner.

*P. J. Ashe,* (*W. F. Barrington* with him,) for the respondent.

RUGG, C.J. This is a petition for a writ of certiorari to quash the proceedings of the respondent taken by him upon a petition against William Johnson, mayor of the city of North Adams, whereby there was sought review of the action by the said mayor in removing the petitioner as a police officer of the city of North Adams, and his reinstatement as such police officer. The return of the respondent sets out a copy of that petition for review as amended, and all proceedings thereon. The return must be taken to set out an accurate record of the proceedings and to be true and conclusive as to all matters of fact within the jurisdiction of the respondent. It is not open to contradiction. *Westport* v. *County Commissioners,* 246 Mass. 556, 562. It thus appears that charges had been preferred to the mayor against the petitioner by his superior officer, and that on October 9, 1928, the mayor notified the peti-

tioner in writing that he contemplated removing him from office as one of the police officers of the city of North Adams on Saturday, October 13, 1928, at two o'clock in the afternoon, specifying at the same time in detail twenty-two charges made against him. This notification bearing the heading "CITY OF NORTH ADAMS MASSACHUSETTS OFFICE OF THE MAYOR" was served by a deputy sheriff and with copy of the sheriff's return was filed with the city clerk. The petitioner did not appear either personally or by counsel before the mayor on October 13, 1928, or at any other time. The mayor later on that day removed him from office and sent to the petitioner written notice that the charges stated in the letter of October 9 had been found to be sustained and that for those reasons he had been removed. The mayor also caused to be filed with the city clerk a signed statement to the same effect. Seasonably thereafter the petitioner brought his petition for review in the District Court for Northern Berkshire. After hearing upon such petition for review the respondent filed a decision in which, after a considerable recital of facts found, he stated his final decision in these words: "The evidence shows there was information furnished the Mayor from sources which he considered reliable, which amply justified his finding the charges sustained to such an extent as to warrant the removal of the petitioner, and the petitioner's failure to appear in his own defense warrants inferences unfavorable to his interests. I therefore find that the action of removal complained of was justified and is hereby affirmed."

It is provided by § 42B, added to G. L. c. 31 by St. 1923, c. 242, § 1, that upon such petition for review the "decision of the court shall be final and conclusive upon the parties." Nevertheless it was not the legislative intent thereby to deprive parties of the beneficent remedy afforded by the extraordinary writ of certiorari if there are substantial errors of law apparent on the record adversely affecting their material rights. *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193, 199, 200, and cases there cited.

The function of a writ of certiorari is to annul proceed-

ings of a judicial or *quasi* judicial tribunal not otherwise reviewable which show on their face a defect as matter of law so substantial in nature as to make it manifest that justice requires the writ to issue in order to prevent a material wrong. It does not issue on account of formal or technical errors or those which have not resulted in manifest injustice to the petitioner or which have not adversely affected the real interests of the general public. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 546. *Mayor of Medford* v. *Judge of the District Court,* 249 Mass. 465, 468. *Roman Catholic Archbishop of Boston* v. *Board of Appeal of Boston,* 268 Mass. 416, 419. The writ does not issue as matter of right but rests in sound judicial discretion. It will not be granted unless the petitioner demonstrates that substantial justice requires it even though defects of some comparatively inconsequential nature may appear on the record. *Sears* v. *Mayor & Aldermen of Worcester,* 180 Mass. 288, and cases cited. *Corcoran* v. *Aldermen of Cambridge,* 199 Mass. 5, 14.

It is apparent from the decision filed by the respondent that he undertook scrupulously to follow the principles of law laid down in *Selectmen of Wakefield* v. *Judge of the District Court,* 262 Mass. 477, 481, 482, 483. Those principles need not be restated. On that petition it was the duty of the respondent under said § 42B to examine the action of the mayor, hear any or all of the witnesses, and determine whether upon the evidence presented to him the action of the mayor in removing the petitioner was justified.

The first contention of the petitioner is that the proceedings should be quashed for the reason that the respondent ought to have ruled that there was no compliance by the mayor with the statutory requirement that the petitioner as police officer could not be removed "except after a full hearing of which he shall have at least seventy-two hours' written notice." § 42A added to said c. 31 by St. 1923, c. 242, § 1, and amended by St. 1925, c. 220, § 2. He complains especially of the ruling of the respondent that although the notice given to the petitioner by the mayor was informal and "clearly should have stated that a hearing upon

the charges filed would be held at a definite time and place,"
yet because that notice contained charges accusing him of
twenty-two distinct and grave derelictions of duty, he must
have realized the seriousness of the matter and that it was
reasonable to infer that he knew from this notice that the
mayor contemplated consideration of action upon these
charges at his office at the city hall at the hour named in
the notice. So far as this was a finding of fact, of course it is
not open to review. We cannot say that it contains any
erroneous ruling of law. Under the statute as at present
phrased the petitioner could not be removed except after
hearing preceded by a notice with statement of reasons. The
notice in question indubitably was served a sufficient length
of time before the time stated therein. Any attempt by the
mayor to remove the petitioner from his office without a hear-
ing and without notice would have been futile under the stat-
ute. *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174,
180, 181. The removal of a police officer is a quite different
thing from a temporary suspension without notice, when
necessary as matter of police discipline, for just cause and
for reasons to be given in writing within twenty-four hours
after such suspension, also permissible under said § 42A.
The two cannot well be confused on reading that section.
In these circumstances the inference is permissible that the
petitioner had just cause to believe that at the time and
place mentioned in the notice the mayor intended to do
whatever was necessary as a prerequisite to his removal,
provided a finding was made after hearing that the charges
specified in the notice were sustained. The charges against
the petitioner were of flagitious personal and official mis-
conduct. They would naturally be resented by an honest
man who would avail himself of every reasonable opportunity
to prove their falsity. *Attorney General* v. *Pelletier,* 240
Mass. 264, 316, 323. In view of all the attendant conditions
the finding was warranted that the petitioner, after the
notice was served upon him, as a reasonable man ought to
have inferred that the purpose of the notice was to give him
an opportunity to be heard upon the charges stated therein
at the time designated and at the office of the mayor in the

city hall. The whole purpose of the statutory requirement for a preliminary notice with statement of reasons and a hearing is to give to a person of the class to which the petitioner belonged an opportunity to defend himself against the proposed charges and to have a fair hearing. If the mayor as an executive officer was thought to be partisan, it was still the duty of the petitioner to appear before that officer and present his evidence. Thus the foundation would be laid for a review by the disinterested judicial tribunal designated in the statute. The design of the civil service law is to free competent and upright public servants from arbitrary removal but not by the requirement of insubstantial formalities to shield the inefficient or unworthy from being separated from the public service. *McCarthy* v. *Commonwealth*, 204 Mass. 482, 486. *O'Brien* v. *Cadogan*, 220 Mass. 578. There is nothing inconsistent with this conclusion in cases like *Ransom* v. *Boston*, 196 Mass. 248.

The petitioner further contends that it is apparent from the finding of the respondent that no legal evidence was presented to the mayor on October 13 to support the charges made and to warrant his removal. The petitioner did not appear at that time. Thereby he waived the right himself to hear the testimony of witnesses and to cross-examine them. The mayor had interviewed many of the witnesses, and had received their direct statements in substantiation of the charges. The chief of police was ready to produce at the hearing before the mayor witnesses to support the charges. He had personal knowledge as to many facts of that nature which he had communicated to the mayor. It is not essential that the hearing before the mayor be according to strict evidentiary procedure provided substantial justice is done. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 548. At the time appointed the mayor, chief of police and city solicitor were present at the office of the mayor. When it became obvious that the petitioner had not appeared, the city solicitor advised that the mayor and the chief of police go over the charges in a formal way. The latter recounted

the fact that he had gone over the charges several times with the mayor and was ready to call witnesses. At the hearing before the respondent the mayor and the chief of police testified. At that hearing all the information in the possession of the mayor at the time of removal was presented by testimony. The respondent, under a ruling that by said § 42B he was bound to review the entire action of the mayor in removing the petitioner from office, received testimony as to what knowledge the mayor acquired touching the charges before they were filed with him and before the time appointed for a hearing by him. In view of all unreported evidence thus received the respondent made the finding hereinbefore quoted. It is not necessary to examine with nicety the questions of law thus raised as to testimony received and as to procedure. The underlying factors are these: the petitioner was removed from office upon charges showing serious misconduct; he did not appear before the mayor at the time and place afforded for refutation of those charges; that of itself warrants inferences unfavorable to him; at the hearing before the respondent upon the petition for review he merely objected to various steps; the respondent as an impartial judicial magistrate has found that the action of the mayor in removing the petitioner was justified; the petitioner now seeks to have these proceedings quashed. In substance and effect the mayor as an executive officer and the respondent as a judge, in separate proceedings and acting independently, in finding the charges sustained or justified have declared that the petitioner was unfit to be and to remain a police officer. In these circumstances the judicial discretion of the single justice was rightly exercised in refusing to put forth the extraordinary power of the court in favor of the petitioner. It is manifest that the petitioner has no genuine right to remain or to be reinstated as a police officer. Even though meticulous examination of every part of the proceedings might reveal some deviations from strict regularity or technical accuracy, the overwhelming consideration of want of genuine harm or sub-

stantial injustice to the petitioner does not require the quashing of the proceedings of the respondent. In a case like the present the interest of the public welfare also is entitled to be weighed in the balance to determine whether sound judicial discretion ought to be exercised in favor of the petitioner. *Hancock* v. *Boston*, 1 Met. 122, 123. *Stone* v. *Boston*, 2 Met. 220, 228. *Pickford* v. *Mayor & Aldermen of Lynn*, 98 Mass. 491, 496. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212. *Pigeon's Case*, 216 Mass. 51, 55. *Byfield* v. *Newton*, 247 Mass. 46, 58.

*Exceptions overruled.*