W. J. Manning, Inc. *v.* Boston Traffic & Parking Commission.

W. J. Manning, Inc. *vs.* Boston Traffic and Parking
Commission.

Suffolk.    December 8, 1965. — December 30, 1965.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, & Spiegel, JJ.

*Public Works. Contract,* Bidding for contract. *Certiorari. Words,*
"Casualty."

It was proper to dismiss a certiorari proceeding seeking to quash an
award of a contract for the furnishing and installation of parking
meters to the lowest bidder on the ground that the bidder had attached
a letter to his bid stating, "Referring to . . . [a certain sentence of the
specifications which] reads: 'If the Contractor is delayed by fire or
other casualty for which the Contractor is not responsible . . . the con-
tractor shall be allowed such extension of time as the . . . [awarding
authority] shall determine to be just.' . . . [I] assume that the word
'casualty,' used in this sense, means any cause beyond the control of the
contractor.", where it appeared that the bidder intended to conform to
the specifications whatever the meaning of "casualty," and that ac-
ceptance of his bid would not result in any manifest injustice to the
petitioner, the second lowest bidder, or adversely affect the interests of
the public.

Petition for a writ of certiorari filed in the Superior
Court on February 11, 1965.

The case was heard by *Sullivan, J.*

*Arthur M. Gilman* for the petitioner.

*Victor Brogna,* Assistant Corporation Counsel, for the
respondent.

Spiegel, J.   This is a petition for a writ of certiorari to
quash the action of the respondent, Boston Traffic and
Parking Commission (commission), in awarding a contract
for the purchase of 9,000 parking meters to M. H. Rhodes,
Incorporated (Rhodes).   The petitioner, W. J. Manning,
Inc. (Manning), appeals from the order of the Superior
Court denying its petition.

The commission invited sealed bids for furnishing and in-
stalling meters in the city of Boston.   Rhodes bid $465,930

and Manning bid $477,000. A third company made a higher bid for a type of meter not called for in the specifications. In a letter attached to its bid Rhodes said, "Referring to Article 12, 'Specifications,' the last sentence reads: 'If the Contractor is delayed by fire or other casualty for which the Contractor is not responsible or by general strikes or lock-outs caused by acts of employees, the contractor shall be allowed such extension of time as the Traffic and Parking Commission shall determine to be just.' We assume that the word 'casualty,' used in this sense, means any cause beyond the control of the contractor." At a meter demonstration held before the commission, Manning contended that this letter caused the bid submitted by Rhodes to vary from the published specifications so that the bid could not be considered by the commission. Rhodes' representatives at the demonstration said, "You don't have to make out a contract with the definition. We didn't take exception" and Rhodes "will definitely install the meters as complied with in the specifications." The commission awarded the contract to Rhodes. We are of opinion that Rhodes' assumption as to the meaning of a "casualty" did not make its bid unacceptable, since it is clear that Rhodes intended to conform to the specifications whatever the meaning of casualty. See *Nelson* v. *Hamlin,* 258 Mass. 331, 340. This is supported by the statements of Rhodes' representatives to the effect that the definition of "casualty" was not an essential element of Rhodes' bid.

Further, Rhodes' definition of "casualty" is, at most, a minor variation from the published specifications. A contractor is responsible for the acts of his employees and subcontractors. Consequently it is difficult to imagine a cause of delay beyond the control of the contractor "for which the contractor is not responsible" which is not a "casualty."

Even if there were significant differences in the definitions of "casualty," the effect, if any, on the obligations of Rhodes would be minimal. A "casualty" is grounds for requesting an extension of time for performance, but such

an extension is entirely within the discretion of the commission under art. 12 of the invitation to bid.

A writ of certiorari will not issue for errors "which have not resulted in manifest injustice to the petitioner or which have not adversely affected the real interests of the general public." *Whitney* v. *Judge of the Dist. Court of No. Berkshire*, 271 Mass. 448, 459. *Chick's Constr. Co. Inc.* v. *Wachusett Regional High Sch. Dist. School Comm.* 343 Mass. 38, 41. While it is true that the commission could have rejected all the bids (St. 1909, c. 486, § 30, as amended) it was not required to do so just because the Rhodes' bid included a minor variation from the published specifications. We do not believe that the acceptance of the Rhodes' bid resulted in a manifest injustice to Manning, nor do we believe that it adversely affected the interests of the public. See *John D. Ahern Co. Inc.* v. *Acton-Boxborough Regional Sch. Dist.* 340 Mass. 355, 358; *DiMinico & Cincotta, Inc.* v. *Fire Commr. of Boston*, 346 Mass. 766.

*Order affirmed.*