WESTLON UNIFORM COMPANY, INC. *vs.* MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk.  October 17, 1979. — February 8, 1980.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Massachusetts Bay Transportation Authority,* Contract.  *Contract,* Bidding for contract.

A bidder on a contract to supply uniforms to a public authority was not legally entitled to the award as the lowest of three bidders, where the sample furnished with its bid did not conform to the authority's announced style specifications, the sample furnished by the next lowest bidder did conform, and the style specifications appeared, in the circumstances, to be a critical part of the proposal.  [148]

CIVIL ACTION commenced in the Superior Court on September 15, 1977.

The case was heard by *Curley,* J., a District Court judge sitting under statutory authority.

*Robert E. McLaughlin (Sandra C. Steele* with him) for the plaintiff.

*Ronald G. Busconi,* Assistant General Counsel, for the defendant.

PERRETTA, J.  The plaintiff, Westlon Uniform Company, Inc., commenced an action in the Superior Court to compel the defendant, Massachusetts Bay Transportation Authority (Authority), to award it, as the lowest bidder, a two-year uniform supply contract.  The trial judge heard evidence, made findings of fact and conclusions of law, Mass.R.Civ. P. 52(a), 365 Mass. 816 (1974), and dismissed Westlon's complaint.  We affirm the judgment.

On appeal Westlon asserts that the judge was in error in concluding that Westlon was not the lowest responsible bidder due to its failure to submit with its bid samples of the uniforms in accordance with the Authority's specifications. The facts surrounding this controversy are not in dispute because Westlon readily admits its samples did not match the style specified in the Authority's proposal and addenda, whereas the samples submitted by the other two bidders, Allied Uniform Company (Allied) and Caleb V. Smith and Son (Smith), did.  It argues, however, that it was nonetheless the lowest responsible bidder because the samples were required only for the purpose of determining workmanship and quality.  In these respects the evidence established its samples were superior to those submitted by Allied and Smith.  The Authority argues, simply, that because the proposal required samples in accordance with the specifications it was not required to award the contract to Westlon.

We have before us the transcript of the evidence and documentary exhibits as well as the judge's findings, which are not clearly erroneous, Mass.R.Civ.P. 52(a).  We set out the facts as found and as supplemented by the evidence. *Hastoupis* v. *Gargas, ante* 27, 28-29 (1980).  During the spring of 1977 the Authority decided to change the style and color of the uniforms that it supplied to its drivers. Sketches of new unforms were prepared by the Authority, and samples were made by Allied, the manufacturer and supplier of uniforms to the Authority under a previous contract with it. These samples were then submitted to a committee of the

Authority for approval. On June 29, 1977, the Authority sent out invitations to bid to approximately twenty-eight uniform manufacturers. These prospective bidders, including Westlon, Allied, and Smith, received a "bid package" which consisted of detailed specifications concerning the style and construction of the uniforms and information regarding the necessary qualifications of the bidders, along with the procedures that each should follow in submitting a bid. The invitation advised the recipients that the Authority would evaluate their bids on the basis of "(1) compliance with specifications, (2) Quality of workmanship and materials." The bidding instructions included the requirement that "(b) The bidder shall agree to furnish the items of uniform equipment in complete conformity to the specifications." In the document entitled "Proposal," which was part of the bid package, the Authority mandated that: "Each bidder must submit a sample of each garment covered in the bid to the Authority either prior to the bid opening date or with his proposal. Samples must be prepared in accordance with the Specifications and any addendo [*sic*] . . . . Samples will be judged for workmanship, construction, and quality. If the sample submitted is not judged to equal, or to exceed, specifications and to exhibit a high quality of workmanship, the corresponding bid will be rejected." This recital was repeated on the first addendum to the proposal. This addendum made numerous changes in the specifications, and the Authority changed the bid opening date from August 3 to August 17, 1977, to allow the bidders more time to prepare samples. On August 9 and 10, the Authority again changed the specifications by issuing addenda two and three, both of which provided that "these changes do not have to be incorporated into the sample garments" submitted with the bids. The bid-opening date remained unchanged.

Prior to the bid-opening date, the Authority returned to Allied the display sample which Allied had made in the spring at the request of the Authority. Allied submitted a conforming sample with its bid, and the trial judge found

that this uniform was not the original model uniform. West-lon submitted its bid and sample on August 15, 1977. At that time it informed the buyer for the Authority that its sample did not comply with the specifications but that it was submitting the uniform only for the purpose of allowing evaluation of Westlon's workmanship, quality, and construction. Westlon advised the Authority orally and in writing that: "Should Westlon Uniform Company be the apparent low bidder, we will be more than happy to supply a pre-production sample of anything you would request. This would be done prior to making the award, etc." Although Westlon was the low bidder, the Authority awarded the contract to Allied, the next lowest bidder. Allied's sample complied with the specifications, as did Smith's, the high bidder.

The sole issue before us is whether the nonconformity of Westlon's sample to the style specifications is a sufficient and valid basis to deny it the uniform contract.[1] In support of a negative answer to this question, Westlon relies upon *W. J. Manning, Inc.* v. *Boston Traffic & Parking Commn.*, 350 Mass. 24 (1965). There the bid proposal provided that if there was a delay in performance due to a "casualty for which the contractor is not responsible" the commission would grant an extension of time for performance. The plaintiff challenged the contract award because the successful bidder attached a letter to its bid in which it stated that it assumed "casualty" meant "any cause beyond the control of the contractor." Westlon points to the fact that in affirming that award the Supreme Judicial Court found

---

[1] The parties argued extensively the applicability of G. L. c. 7, § 22, to this award. The Authority resists the application of that statute to its bidding procedures, because, it argues, it is not a State agency. See *Massachusetts Bay Transp. Authy.* v. *Boston Safe Dep. & Trust Co.*, 348 Mass. 538, 543 (1965). Westlon argues its applicability and relies upon the bidding procedures promulgated pursuant to § 22. Because the procedures employed by State agencies are identical to those here employed by the Authority, we need not consider this issue, for our opinion is based upon our review of the record in light of the Authority's published procedure. Accord, *id.* at 545.

the bid acceptable "since it is clear that [the contractor] intended to conform to the specifications whatever the meaning of casualty." It argues that because it intended to submit a pre-award conforming sample if it were the low bidder, its failure to do so at the time required by the proposal was a minor variation which did not otherwise disqualify its bid. *W.J. Manning, Inc., supra,* 350 Mass. at 25.

We cannot accept Westlon's argument. The very function of the bidding process is to guarantee to all prospective bidders equality in treatment in considering the quality and price of the item to be furnished.[2] *Interstate Engineering Corp.* v. *Fitchburg,* 367 Mass. 751, 757-758 (1975). The Authority twice stated, once in its proposal and once in its first addendum, that bidders were to submit samples in accordance with the specifications, which particularized the style of the uniforms.[3] The very purpose of the contract was to secure a new style of uniform. Although there was uncontradicted testimony that Westlon's samples were superior in workmanship, quality and construction, that is not conclusive of its right to the award. The proposal and addenda cautioned that a bid would be rejected if the sample did not equal or exceed the specifications. The bid package made it very clear that style was a critical factor and that it was to be included in the samples. This fact is further demonstrated by the Authority's postponing of the bid-opening date when it made numerous changes in the specifications and required that those changes be reflected in the sample. If only the workmanship, quality, and construc-

---

[2] The judge found that there was no proof of discrimination or fraud by the Authority in requesting Allied to furnish a design sample. He further found that "Westlon was placed in no different position [from ] other bidders." Westlon does not attack these findings as clearly erroneous in its brief. See Mass.R.A.P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[3] Further, the Authority's Procurement Policies and Procedures (see note 1, *supra*) provided: "Award will be made to the bidder whose bid meets the specifications and the requirements of the invitation to bid and is the lowest responsible bidder and the best bid, considering price, quality of article to be supplied, and satisfactory to the requirements of the Authority."

tion of the sample were at issue, a postponement would have been unnecessary, as was the case with the changes required by the second and third addenda. Unlike in *W.J. Manning, Inc., supra,* 350 Mass. at 25, where the definition of "casualty" was not "an essential element" of the bid, we conclude that style was a critical part of the present proposal, and Westlon was required to submit a sample in accordance with the specifications in all respects. See 30 Comp. Gen. 179, 181-182 (1950); 36 Comp. Gen. 251, 252-253 (1956), (decisions of the United States Comptroller General on the protests of awards of Federal contracts). Its failure to do so was not a minor variation rectified by its intention to do so should it be the low bidder. As a result, the Authority was not obligated to award it the contract.

*Judgment affirmed.*