WILLIAM H. MORRISON *vs.* SELECTMEN OF WEYMOUTH.

Norfolk.    December 7, 1931. — June 28, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*License*, For storage and sale of petroleum products. *Petroleum. Practice, Civil,* Certiorari proceedings, Exceptions. *Certiorari. Evidence,* Presumptions and burden of proof. *Notice. Laches. Public Officer.*

In certiorari proceedings to quash the action of the selectmen of a town in granting a license to store and sell petroleum products under G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, there was no error in the denial by the single justice of a motion by the petitioner that the respondents be ordered to amend their return by stating whether or not a structure existed on the premises in question at the time when the application for such license was filed with the respondents, and whether a structure had existed thereon subsequent to that time; and by stating a certain fact relating to a time subsequent to the granting of the license by the respondents.

In certiorari proceedings to quash the action of the selectmen of a town in granting a license to store and sell petroleum products under G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, this court, stating that it was doubtful whether the petitioner could assail a finding by the respondents to the effect that he was not an abutter on the tract of land in question, and assuming, without deciding on the facts, that he was such an abutter, *held,* that the fact, that he was not notified of the selectmen's hearing in the manner prescribed by the statute, did not entitle him to relief, since it appeared that he had actual notice of the hearing two days before it was held and that at the hearing he made no objection based on want of notice.

The license above described having been granted on November 5, 1928, after hearing on October 15, 1928, no excuse appeared for the petitioner's delaying the filing of the petition for a writ of certiorari until March 10, 1930.

The petitioner in the proceedings above described could not object that the Commonwealth did not have due notice.

It *was stated* that the granting of a license to store and sell petroleum products under G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, was not invalid in that the applicant for such license was not the owner of nor interested in the tract of land in question at the time of the filing of the application and at the time of the

granting of the license, especially where the then owner of the tract, contemplating a sale to the applicant, joined in the application as "co-applicant" and requested that the license be granted to the applicant.

G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, permitted the selectmen of a town to grant a license for the storage and sale of petroleum products upon a tract of land even though no structure for such use were in existence upon the tract at the time of the granting of the license.

In the absence of anything to show improper influence or conduct on the part of the selectmen of a town, the granting by them of a license under G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, for the storage and sale of petroleum products was not invalid merely because of the circumstance that, subsequent to the selectmen's hearing on the application for the license and before it was granted, the applicant offered to contribute to the town, if the license were granted, a certain sum of money for the rebuilding of streets located near the tract of land in question.

A failure on the part of the selectmen to insert in such license a certain condition contained in their vote to grant the license did not invalidate either the license or the condition.

A writ of certiorari does not issue on account of formal or inconsiderable errors which do not reach to vital matters, or which have not resulted in genuine injustice to the petitioner for the writ, or which have not affected the real interests of the general public.  Per Rugg, C.J.

PETITION for a writ of certiorari, filed in the Supreme Judicial Court for the county of Norfolk on March 10, 1930, and afterwards amended.

The case was heard by *Wait*, J., upon the amended petition and the respondents' return, material portions of which are described in the opinion.  The petitioner filed a motion that "the respondents be ordered to amend their return filed in the court by certifying to the court the following material facts in relation thereto: (1) Whether or not a building or structure existed on the said premises to be acquired at the time the application for the said license was filed with the respondents, and whether or not a building or structure has since then existed on said premises; and if so state the nature and size of the same.  (2) Whether in order to secure a renewal of said alleged license a certificate reciting use and occupancy of said premises was filed for registration with the town clerk of Weymouth on or before the thirtieth day of April, 1929, by the owner or occupant of said premises."  The motion was denied, and the

petitioner saved an exception. The single justice reported the case for determination by the full court.

The case was argued before *Rugg,* C.J., *Pierce, Sanderson,* & *Field,* JJ., and, after the death of *Sanderson,* J., was submitted on briefs to *Crosby & Donahue,* JJ.

*W. B. Grant, (C. B. Barnes, Jr.,* with him,) for the petitioner.

*F. G. Bauer,* Town Counsel, & *H. Parker, (H. G. Gilbert* with them,) for the respondents.

Rugg, C.J. This is a petition for a writ of certiorari. The petitioner seeks to have quashed the proceedings of the respondents in granting on November 5, 1928, a license to the Standard Oil Company of New York to erect, maintain and use on a tract of land steel storage tanks for the keeping, storage and sale of petroleum products.

The hearing before the single justice was upon the petition and the return. No evidence was offered. A motion, presented by the petitioner at the beginning of that hearing, that the respondents be ordered to amend their return, was denied. The exception to this ruling is without merit. *Ward* v. *Aldermen of Newton,* 181 Mass. 432, 433. *Marinelli* v. *Board of Appeal of Boston,* 275 Mass. 169.

The authority of the respondents to act in the premises was set forth in G. L. c. 148, § 14, as then most recently amended by St. 1928, c. 325, § 1, the events here under review having occurred before the enactment of St. 1930, c. 399, whereby said c. 148 as amended was stricken out and a new chapter 148 inserted in its stead. The words of said § 14, as amended, here material are as follows: "No building or other structure shall . . . be used for the keeping, storage, manufacture or sale of . . . [petroleum products] unless the . . . selectmen shall have granted a license therefor after a public hearing . . . notice of the time and place of which hearing shall have been given, at the expense of the applicant . . . by the selectmen, by publication, not less than seven days prior thereto, in a newspaper published . . . in the city or town, wherein the land on which such license is to be exercised is situated, and also by the applicant by registered mail, not less than seven days prior

to such hearing, to all owners of real estate abutting on said land. . . ."

1. The first ground of invalidity urged by the petitioner is that he as an owner of land abutting on the tract on which the license was to be exercised was not notified of the hearing as required by the governing statute. The return of the respondents shows that the application by the Standard Oil Company of New York for a license did not contain a definite description of the land on which it was to be exercised. It is there described as "premises to be acquired by said company from The American Agricultural Chemical Company, embracing the property known as Lower Neck and Upper Neck off . . . the end of River Street. . . ." The notice issued by the respondents and published as required by the statute followed the application in its phraseology. It gave no other description of the land on which the license was to be exercised. It makes no reference to plans or public records by which a fairly precise description of such land might be ascertained. The return further states that "With said application of said Standard Oil Company of New York there was filed with said board of selectmen a plan showing premises which said applicant proposed to acquire and on which said license was applied for, a copy of the material portions of which plan is hereto appended as annex 'A'. Said plan when compared with the official town survey maps, a copy of the material portion of which is hereto appended as annex 'B', showed that the only abutter to said premises on or within which the provisions of the said license were to be operative, was The American Agricultural Chemical Company; and these respondents certify and return that said board of selectmen accordingly found as a fact that said American Agricultural Chemical company was the only abutter on said premises." It appears from the plans annexed to the return that the tract of land owned by The American Agricultural Chemical Company is a peninsula comprising sixty-eight and four tenths acres. On one plan is marked: "End of proposed purchase." Although not very clear, we think it susceptible of the inference that the

proposed purchase included about the tip half — the half jutting into the water — of that peninsula, and excluded the half adjacent to the mainland. This proposed purchase, if effectuated, would constitute The American Agricultural Chemical Company the sole abutter, because its land alone would intervene between the proposed purchase and property of other owners abutting on The American Agricultural Chemical Company land on the side of the peninsula nearer the main land. The license as issued substantially follows in its description of the tract to be used for its exercise the terms of the application and of the notice.

It is doubtful whether the petitioner can assail successfully the finding of the respondents to the effect that he was not an abutter upon the tract in question. It was said by Knowlton, J., speaking for the court in *Collins* v. *Mayor & Aldermen of Holyoke*, 146 Mass. 298, 305, that the statements in the official return "are to be taken as true, not only in those parts which set out the record . . . but also in those which allege extraneous facts which might have been traversed, and perhaps controlled by evidence." The burden rested upon the petitioner to prove by evidence outside the record, if necessary, that the respondents were without jurisdiction. *Marcus* v. *Street Commissioners*, 252 Mass. 331. Proof that the petitioner was an abutter and had been given no notice was essential to this branch of the petitioner's case.

If, however, it be assumed in favor of the petitioner, without so deciding, that he was an owner of land abutting on some part of the large tract owned by The American Agricultural Chemical Company, he is not entitled to relief even though the return does not show that he was notified of the hearing in the way pointed out by the statute. It appears from the return that a protest against the granting of the license was signed by the petitioner two days earlier than the time appointed for the hearing and was filed at or before the hearing. No objection based on want of notice appears to have been made at any of the proceedings before the respondents. Actual notice received by a party affected by the proceedings, although not in the form or through the

channel provided by the statute, usually bars him from relief by certiorari. *Stone* v. *Boston*, 2 Met. 220, 228. *Pickford* v. *Mayor & Aldermen of Lynn*, 98 Mass. 491, 495. *Howland* v. *Greenfield*, 231 Mass. 147, 149–150. *Whitney* v. *Judge of the District Court*, 271 Mass. 448, 459–461. Voluntary appearance by a party entitled to notice dispenses with the necessity of formal notice. It may confer jurisdiction. *Paige* v. *Sinclair*, 237 Mass. 482. See *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160, 172. In these circumstances there was no want of jurisdiction in the respondent board to deal with the petition for license.

The hearing on the application was held on October 15, 1928, and the license was granted on November 5, 1928. The present petition was not filed until more than a year and four months later, on March 10, 1930. No excuse appears for such delay. *Byfield* v. *Newton*, 247 Mass. 46, 58–59, and cases there collected. The case at bar is distinguishable from *Hall* v. *Staples*, 166 Mass. 399, where the petitioner had no knowledge of the proceedings of which he was entitled to notice until after the order was made and he was deprived of an opportunity to be heard. For the same reason *Wright* v. *Lyons*, 224 Mass. 167, is inapplicable to the case at bar. In *Roman Catholic Archbishop of Boston* v. *Board of Appeal of Boston*, 268 Mass. 416, the notice required for the benefit of the public at large and affecting the general welfare was not given.

The petitioner cannot object that the Commonwealth did not have due notice. *Quinn* v. *Middlesex Electric Light Co.* 140 Mass. 109, 111.

2. The second ground of invalidity stated by the petitioner is that the Standard Oil Company of New York was not the owner of the tract of land and had no interest in it at the time of the filing of the application and at the time the license was granted. We do not understand that this objection has been argued. It may, therefore, be treated as waived. But, however that may be, the objection cannot be supported. It appears from the record that before the hearing The American Agricultural Chemical Company

as owner of the land joined "as co-applicant" and requested that the license be granted to the Standard Oil Company of New York. The governing statute refers only to the "applicant" in this connection. In other parts of said section as amended the words "owner or occupant" appear. Compare St. 1913, c. 577, § 1, as amended by St. 1914, c. 119, § 1, where it was required that the owner of the land be the applicant. In these circumstances we think that the word "applicant" is not intended to mean the same as owner or to be confined to those who are owners.

3. The petitioner next argues that G. L. c. 148, § 14, as amended by St. 1928, c. 325, § 1, requires that a building or structure be in existence for use when the license is granted. There are no words in the statute making this requirement either in express terms or by fair implication. Buildings and structures of the nature proposed by the licensee have peculiar adaptability to the nature of the commodity to be stored and sold and are not, according to present business conditions, suitable for general commercial or manufacturing uses. It is inferable from the description in the application of the proposed structures that their construction would require the expenditure of large sums of money. Adverse decision by licensing authorities would render such expenditures, if required to be made in advance of a license, of comparatively small value. Engineering and architectural skill can make plain to a licensing board the nature and appearance of the required building and structures from plans, elevations, and other devices without actual construction, so that there can be understanding of all the factors involved in determining whether the license ought to be granted. Every practical consideration supports the view that the General Court could not have intended to demand the undertaking of unnecessary financial risks of that character by property owners. A statute as a whole ought, if possible, to be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason. *Dascalakis* v. *Commonwealth*, 244 Mass. 568, 570. It was said in *Leach* v. *State Fire Marshal*, 278

Mass. 159, 165, in interpreting § 13 of c. 148 inserted in the General Laws by St. 1930, c. 399, § 1, that the "inquiry by the marshal upon the appeal [from the granting of a license by the local licensing authority] relates to the future and to the exercise of the licenses in connection with structures not erected." The words of the statute then under examination do not differ on this point in any material particular from those of the statute here controlling. The statutes under consideration and the pertinent facts in *Cheney* v. *Coughlin*, 201 Mass. 204, and *Jaffarian* v. *Building Commissioner of Somerville*, 275 Mass. 267, are so different from those in the case at bar as not to require discussion to demonstrate their inapplicability as authorities in favor of the petitioner.

This contention of the petitioner cannot be supported.

4. The petitioner argues that the license was invalid because, after the hearing and before favorable action on the application, the Standard Oil Company of New York offered to contribute to the town of Weymouth, if the license were granted, $10,000 toward the rebuilding of River and Neck streets, located near the tract of land involved.

There is nothing in the record to indicate improper influence, much less personal corruption, arising out of this incident. There is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare. *Newcomb* v. *Aldermen of Holyoke*, 271 Mass. 565, 568. It may well have been that, if the license were granted, there would result such increase and change in the nature and amount of traffic on these streets as to require the expenditure of that sum or an even greater sum to put them in safe and proper condition. Contribution or the assumption of obligations for the maintenance of streets is not in and of itself an impairment of the validity of official action of public boards concerning such ways. In *Atkinson* v. *City Council of Newton*, 169 Mass. 240, 242, it was said: "There may be voluntary private contributions reducing the amount of the public charge, and such contributions do not invalidate the acts of the authorities charged with the duty of ad-

judging whether the improvement shall be made, and its details." In *Brookfield* v. *Reed*, 152 Mass. 568, 574, it appeared that landowners desired a way raised substantially in elevation in order that they might develop a water power, and gave a bond to the town to keep the way in repair if raised to suit their desires. In that connection occurs this statement: "We have no doubt that the plaintiff could lawfully receive from individuals an obligation to relieve it from the expense of keeping a piece of public way in repair for all time." This language is found in *Southborough* v. *Boston & Worcester Street Railway*, 250 Mass. 234, 240: "There are many instances where, before or at the time of the exercise of the *quasi* judicial faculty by boards of public officers in laying out, altering or relocating public ways, contracts have been made with the municipality touching the expense of laying out, alteration or relocation of a highway whereby private individuals have contracted with the municipality to bear the whole or a part of such expense. In some instances payments or other arrangements have been made to relieve or lighten the expense to the city or town. Such contracts, payments or other arrangements have always been held valid and enforceable." Numerous supporting authorities are there cited.

5. The final ground upon which the petitioner rests is that, although the respondents voted to grant the license upon the condition that at no time during the life of the license or any renewal thereof should the Standard Oil Company of New York carry on any refining, purifying, or other manufacturing process connected with oils on the premises described in the license, such condition was not inserted in the license. This omission did not invalidate the license or the condition. The vote was extended on the records of the respondents. Its absence from the paper license was not fatal. *Chase* v. *Aldermen of Springfield*, 119 Mass. 556. *Byfield* v. *Newton*, 247 Mass. 46, 58.

The writ of certiorari does not issue on account of formal or inconsiderable errors which do not reach to vital matters, or which have not resulted in genuine injustice to the petitioner, or which have not affected the real interests of

the general public. *Whitney* v. *Judge of the District Court,* 271 Mass. 448, 455. The petitioner fails to make out a case for the issuance of the writ.

*Petition dismissed.*