CITY OF EVERETT *vs.* CITY OF REVERE.

Middlesex.   May 10, 1962. — June 25, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Municipal Corporations,* Fire department, Mutual aid. *Retirement. Evidence,* Relevancy and materiality.

The matter of reimbursement of a city by another city for accidental disability pension payments made by the first city to a member of its fire department and member of its contributory retirement system retired by reason of injury suffered while fighting a fire in the second city pursuant to a "mutual aid plan" previously established between the fire departments of the two cities was governed by G. L. c. 48, § 59A, not by c. 32, § 7 (4).   [587–589]

On the issue of the right of a city to reimbursement by another city for accidental disability pension payments made by the first city to a member of its fire department retired by reason of injury suffered while fighting a fire in the second city pursuant to a "mutual aid plan" previously established between the fire departments of the two cities under G. L. c. 48, § 59A, evidence that under the plan "it was understood and agreed that each fire department would take care of . . . [its] own firemen both as to injury and as to pensions" would be relevant. [589–590]

CONTRACT. Writ in the Superior Court dated August 19, 1959.

The action was heard by *Tomasello, J.*

*Ralph F. Martino,* Assistant City Solicitor, for the defendant.

No argument nor brief for the plaintiff.

SPALDING, J. This is an action of contract brought by the city of Everett for reimbursement for accidental disability pension payments made to Domenic Coveluzzi, a former member of its fire department. The judge found for the plaintiff in the amount of $13,402.66. The defendant excepted to the finding, two rulings on evidence, and the denial of several requests for rulings.

We summarize the evidence as follows: On August 3, 1953, Coveluzzi, a member of the contributory retirement system, responded with his company to a fire alarm in Revere under a "mutual aid plan." At the fire Coveluzzi was observed to be in an "exhausted condition" and later "appeared to be in pain." On August 5, he failed to report for duty and "was reported sick"; he never returned to duty after that date. The medical panel's report showed that Coveluzzi was suffering from heart trouble. On June 30, 1954, Coveluzzi filed an application for accidental disability retirement with the Everett retirement board, and the board voted to grant him a pension as of July 31, 1954. There was no evidence of any notice given to the defendant of the retirement hearing. It was agreed by counsel that proper notices were sent to the defendant's treasurer with reference to the plaintiff's claim for reimbursement under the provisions of G. L. c. 32, § 7 (4) (a) and (b).

Some time between 1922 and 1925 the chiefs of the fire departments of Everett, Chelsea, and Revere met for the purpose of establishing a mutual aid plan. Under the plan "the fire alarm systems of each municipality were connected with each other so that an alarm which was sounded in Revere would also be recorded in [the alarm system of] Chelsea and . . . Everett." Assignment cards were drawn up which provided that "when an alarm was rung in any

one of the cities under the mutual aid plan each respective city would perform the assignment designated by said cards.'' Coveluzzi came to the fire in Revere on August 3, 1953, in accordance with the prearranged assignment prescribed in these cards. A city not a party to the mutual aid system would have to call upon another city for aid and the furnishing of such aid by the city called upon would rest in the discretion of its fire chief.

The judge found that Coveluzzi, since deceased, ''was a member of the contributory retirement system at the time of his injuries as covered by G. L. c. 32, § 7 (4) (a) and (b),'' and that with respect to his ''eligibility to receive the accrued benefits all matters have been complied with.''

The plaintiff's case is grounded on G. L. c. 32, § 7 (4) (a) and (b) (as appearing in St. 1945, c. 658, § 1),[1] which imposes a mandatory requirement on a governmental unit receiving assistance to reimburse the assisting governmental unit for any pensions paid on account of injuries to its members.

---

[1] Section 7 (4) reads:

''(a) Any governmental unit may, by action of the executive or board having jurisdiction in the commonwealth, the county commissioners in a county, the mayor in a city, the board of selectmen in a town, or by the action of any other executive or board having jurisdiction, as the case may be, request and authorize any member in service to go to the aid of a second governmental unit if in the judgment of the head of the department in which such member is regularly employed such action is necessary. While in the performance of his duties pursuant to such request and authorization such member shall be subject to the provisions of sections one to twenty-eight inclusive, and shall have the same rights and privileges thereunder, as if performing the same duties within the scope of his regular employment.

''(b) The governmental unit so requesting such assistance shall reimburse in full, in accordance with the provisions of this paragraph, the first governmental unit for any pension payments lawfully made from the system pertaining thereto on account of any injuries suffered by such member in the course of rendering such aid or on account of his death as the result of such injuries. The treasurer of the first governmental unit shall annually, on or before January fifteenth, upon the certification of the board of the system from which such disbursements have been made, notify the treasurer of the second governmental unit of the amount of reimbursement due therefrom for the previous fiscal year and such latter treasurer shall forthwith take such steps as may be necessary to insure prompt payment of such amount. All such payments due under the provisions of this paragraph from the second governmental unit shall be charged to the pension fund of the system pertaining thereto, or if there is no such system then they shall be paid by such governmental unit from a special appropriation, and as received they shall be credited to or appropriated for the pension fund of the system pertaining to the first governmental unit. In default of any such payment, the first governmental unit may maintain an action of contract to recover the same.''

The defendant requested rulings that "3. This cause is covered by the provisions of G. L. c. 48, § 59A." and "4. The law of c. 32, § 7 (4) (a) and (b), is not applicable in this action." These requests were denied. It is the defendant's contention that G. L. c. 48, § 59A (as amended through St. 1960, c. 14),[2] controls, in which event reimbursement by the city of Revere would not be mandatory, for § 59A provides that "[a]ny city . . . aided under and in accordance with this section . . . *may* reimburse . . . [any city rendering aid under this section] in whole or in part for any payments lawfully made to any member of its fire department . . . on account of injuries or death suffered by him in the course of rendering aid as aforesaid or of death resulting from such injuries" [emphasis supplied].

We are of opinion that G. L. c. 48, § 59A, governs rather than G. L. c. 32, § 7 (4). The former deals specifically and in detail with the subject of mutual aid between fire departments; the latter is a general provision dealing with any aid rendered by one governmental unit to another. The statutes to some extent overlap, for the aid mentioned in § 7 (4) could include fire protection; but it could include many other kinds of assistance. The schemes under each, however, are quite different. As the defendant argues, the "whole purpose . . . of the mutual aid plan [established under § 59A] is to create an enduring obligation with the respective benefits and burdens clearly established and

[2] Section 59A reads: "Cities, towns and fire districts may, by ordinance or by-law, or by vote of the board of aldermen, selectmen or of the prudential committee or board exercising similar powers, authorize their respective fire departments to go to aid another city, town, fire district or area under federal jurisdiction in this commonwealth or in any adjoining state in extinguishing fires therein, and while in the performance of their duties in extending such aid the members of such departments shall have the same immunities and privileges as if performing the same within their respective cities, towns or districts. Any such ordinance, by-law or vote may authorize the head of the fire department to extend such aid, subject to such conditions and restrictions as may be prescribed therein. . . . Any city, town or district in this commonwealth aided under and in accordance with this section may compensate any city, town or district rendering aid as aforesaid for the whole or any part of any damage to its property sustained in the course of rendering the same and may reimburse it in whole or in part for any payments lawfully made to any member of its fire department or to his widow or other dependents on account of injuries or death suffered by him in the course of rendering aid as aforesaid or of death resulting from such injuries."

agreed upon between the . . . [municipalities]." Under § 7 (4) the aid that one unit would be called upon to give to another would be discretionary and not in pursuance of a prearranged plan.

The evidence establishes that the aid furnished by the plaintiff in the case at bar was pursuant to a mutual aid plan, and no contention is made to the contrary. If we were to construe c. 32 as covering the case at bar, then G. L. c. 48, § 59A, would, for all practical purposes, be nugatory. We do not believe the Legislature intended such a result, especially in view of the fact that § 59A was amended as recently as 1960. "A statute is to be interpreted with reference to the preëxisting law. . . . If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be an harmonious and consistent body of law. . . . Statutes 'alleged to be inconsistent with each other, in whole or in part, must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them.' *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, 17." *Walsh* v. *Commissioners of Civil Serv.* 300 Mass. 244, 246. We perceive no such repugnancy here. The defendant's exceptions to the denial of its third and fourth requests are sustained.

A question of evidence requires discussion, as it is likely to arise on a retrial of the case. Thomas J. McCarrick, who was the fire chief of the defendant's fire department on August 3, 1953, after describing the mutual aid plan, was asked: "Now in connection with this mutual aid fire system, what are the arrangements pertaining to injury to firemen or damage to fire equipment of each city while responding under the agreement to a fire in the other city?" An objection by the plaintiff was sustained. The defendant excepted and stated that the witness would testify that "it was understood and agreed that each fire department would take care of their own firemen both as to injury and as to pensions and that each city would take care of the damage suffered by their equipment while at the other city fire."

Unless this evidence was excluded under the best evidence rule — and it is not apparent that it was — it should have been received, as it was offered to show the "conditions and restrictions"[3] agreed upon by the parties touching the subject of payment for injuries. *Passanessi* v. *C. J. Maney Co. Inc.* 340 Mass. 599, 604.

*Exceptions sustained.*

---

[3] The Revised Ordinances of the defendant (§ 6–10) governing the mutual aid system included the following: "The chief of the fire department is hereby authorized to enter into a mutual aid system with such cities or towns as he may deem advisable. Such agreement shall be subject to the approval of the city manager. In order to comply with this provision, the chief is authorized to send fire apparatus and men to such cities and towns who enter into such mutual aid agreements."