ATLAS DISTRIBUTING COMPANY & others *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION
(and a companion case).

Suffolk. April 5, 1968. — June 3, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Alcoholic Liquors, "Post-off." State Administrative Procedure Act. Regulation.*

A decision by the Alcoholic Beverages Control Commission, that "minimum consumer retail price schedules [for liquor] filed pursuant to . . . c. 138, § 25C, would automatically be disapproved [by the commission] if such schedules did not reflect in their entirety 'post-offs' [reductions in prices] granted retailers by wholesalers . . . in schedules filed by . . . [the wholesalers] for prices charged retailers as required by . . . § 25B," was not made in an "adjudicatory proceeding" and was not subject to review under G. L. c. 30A, § 14. [412–413]

The Alcoholic Beverages Control Commission, in furtherance of its responsibility under G. L. c. 138, § 25C (d), to approve minimum consumer retail price schedules for liquor filed thereunder for a two month period only if they are not "excessive, inadequate, or unfairly discriminatory," and to set minimum retail prices on the basis of wholesale cost plus a fair markup, was entitled to take into account fluctuations in wholesalers' prices to retailers through "post-offs," which were reductions in prices granted by wholesalers during the second months of the retail price schedules in schedules of wholesale prices filed for one month under § 25B and which were not reflected by any change in the retail price schedules, and properly might adopt a policy that the retail price schedules "would automatically be disapproved if . . . [they] did not reflect [the "post-offs"] in their entirety"; such policy was not a regulation within c. 30A and c. 138 and was not void in that it had not been adopted in compliance with statutory procedures governing adoption of regulations. [413–415]

PETITION filed in the Superior Court on April 12, 1967, for review of a decision of the respondent commission.

BILL IN EQUITY for declaratory relief filed in the same court on April 6, 1967.

A demurrer in the proceeding for review was heard by *Sullivan,* J., and both cases were heard by him on the merits.

*Christopher J. Armstrong,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

*Harold Hestnes* for Atlas Distributing Company & others.

SPIEGEL, J.   One of these cases is a petition for review brought by a number of wholesale liquor distributors (wholesalers) against the Alcoholic Beverages Control Commission (commission) under G. L. c. 30A, § 14, seeking judicial review of a decision of the commission "which declared that minimum consumer retail price schedules filed pursuant to the provisions of G. L. c. 138, § 25C would automatically be disapproved if such schedules did not reflect in their entirety 'post-offs' granted retailers by wholesalers as reflected in schedules filed by the . . . [wholesalers] for prices charged retailers as required by G. L. c. 138, § 25B." The other case is a suit for declaratory relief brought by the wholesalers against the commission seeking a decree declaring a "ruling"[1] of the commission to be "null and void and permanently enjoining the enforcement and implementation of . . . [the] ruling." The commission filed a demurrer to the petition for review and appealed from an interlocutory decree overruling the demurrer. The cases were consolidated for trial in the Superior Court and were heard on a statement of agreed facts. The trial judge made "findings of fact, rulings of law, and order for decree." A final decree was entered in each case in which the ruling of the commission was "declared to be null and void" and the commission was "enjoined . . . from implementing or enforcing the ruling." The commission appealed from these decrees and the cases are here on a consolidated appeal.

The parties agreed to admit in evidence several "documents." We refer to those which may be pertinent.

1. A letter dated January 12, 1967, from the commission to minimum consumer resale price (MCRP) "filers relative to the public hearing to be held January 24, 1967."

2. A telegram dated January 25, 1967, from the commission to the MCRP filers "indicating vote of the [c]ommission disapproving certain prices filed for March and April."

3. Letter dated January 26, 1967, from the commission

---

[1] The issue involved in this "ruling" is the same as the issue involved in the petition for review.

to all MCRP filers "indicating the [c]ommission will receive new filings for items that were disapproved.. as. indicated in the telegram of January 25, 1967."

4. A letter of the commission dated February 24, 1967, "to all filers of MCRPs indicating procedure for filing period of March 1–10, 1967."

We state the pertinent facts. "A 'post-off' is a reduction in price offered by a distributor-wholesaler of alcoholic beverages to a retailer thereof. A post-off takes the form of a stated reduction in the wholesale price per case of a specific brand item for a period of one month. . . .

"Approximately 60% of the volume of wholesale sales to retailers are on 'posted-off' brand items. Approximately 95% of all brand items sold in the Commonwealth by wholesalers to retailers are 'posted-off' at sometime during the calendar year. . . . The amount of 'post-off' ranges from 50¢ per case . . . to a maximum of $15 per case . . . .

"Prior to the Commission's ruling relating to the requirement that 'post-offs' granted in the wholesale price schedules be reflected in their entirety in the MCRP schedules, the practice of wholesalers, with respect to 'post-offs', was as follows:

"a. Brands with the most consumer acceptance (larger selling brands) would 'post-off' less often and in a lesser amount than brands in the same category which enjoyed less consumer acceptance but were considered by the brand owners to be of the same quality.

"b. The normal wholesaler to retailer price (exclusive of 'post-offs') of brand items in a category considered by the brand owners to be of equal quality would be substantially the same.

"c. The MCRP per bottle of a brand item with greater consumer acceptance would be substantially the same as that of a competitive brand item of less consumer acceptance despite the fact that the wholesale[r] to retailer price of the latter item was 'posted-off.'

"d. Brands which have the highest consumer acceptance

either do not 'post-off' at all or 'post-off' infrequently and in minimum amounts. . . .

"Wholesalers 'post-off' for the following reasons:

"a. To stimulate sales of slow moving brands.

"b. To stimulate sales of a brand in its slow moving season.

"c. To introduce new products to the market.

"d. To expand distribution or increase shelf space of a particular brand.

"e. To compensate the retailer for the increased inventory costs accruing from handling slower selling brand items and promoting sale of same. . . .

"The first notice given by the Commission to the effect that MCRP schedules of an item would not be approved if they did not reflect 'post-offs' was at the hearing of January 24, 1967, called for the purpose of approving MCRP schedules for the months of March and April, 1967. . . . The first written notices were the telegram dated January 25, 1967, . . . and the letter of explanation dated January 26, 1967. . . .

"The pronouncement by the Commission that . . . [it] would not approve MCRP schedules that did not reflect 'post-offs' was not approved by the Governor and Council, nor was it filed with the Secretary of State. . . .

"Following the letter of January 26, 1967, . . . most wholesalers, by permission of the Commission, withdrew their 'post-off' in Section 25B filings in January, to be effective for the month of February, and MCRP schedules as originally filed to be effective for the months of March and April, 1967, were then approved. . . .

"Section 25B schedules filed by wholesalers for March, 1967, reflected 175 'post-offs.' For the month of March, 1966, 1,924 brand items were 'posted-off.' Many items which wholesalers had 'posted-off' for March, 1966, or which otherwise would have been 'posted-off' in March of 1967 were not 'posted-off' as a result of the pronouncement of the Commission as stated in its letter of February 24, 1967. . . .

"No notice of a public hearing was given and no public

hearing was held with respect to the adoption of the ruling referred to in the letter of February 24. . . .

"In Section 25B filings for May, 1967, the Petitioners resumed their usual practice of filing 'post-offs,' but in the Section 25C schedules filed in May, 1967, neither the brand owners nor their authorized agents reflected 'post-offs' in those schedules. If approved, these schedules will be effective for July and August, 1967. . . . The granting of 'post-offs' by the distributor-wholesaler has historically had the effect of increasing the amount of wholesaler to retailer sales of the 'posted-off' brand items."

The trial judge ruled as a matter of law that the commission "acted arbitrarily, capriciously and *unreasonably* and inconsistently with the intent of the legislature as expressed in G. L. c. 138, § 25C" because "[n]o notice of a public hearing was given and no public hearing was held"; the ruling of the commission "would be impossible of fair application" since "it would discriminate against the smaller retailer in favor of the larger retailer because . . . the larger retailer could take advantage of the 'post-off' in greater quantity and thus suppress the price for a longer period of time"; the ruling "would discriminate against the wholesaler and/or the manufacturer of the less popular brands . . . because it appears that he must rely (at least in part) upon this marketing technique to encourage the retailer to purchase his less popular brand"; and the ruling "in no way would benefit the public" because under it "this particular marketing technique would immediately cease since the incentive for the retailer to purchase the less popular brand would . . . disappear."

## THE PETITION FOR REVIEW.

A petition for review may be brought only by one "aggrieved by a final decision of any agency in an adjudicatory proceeding." G. L. c. 30A, § 14. *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372. The petition here seeks to prevent the implementation of the commission's stated re-

quirement that "post-offs" must be reflected in minimum consumer retail prices. This policy is but one element in the commission's determination of prices. The only "final decision" which appears is the commission's approval of prices submitted in compliance, however reluctant, with the new "post-off" policy. Price approval by the commission has been held to be regulatory and not adjudicatory in nature. *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228. *First Church of Christ, Scientist, in Boston, Mass.* v. *Alcoholic Beverages Control Commn.* 349 Mass. 273. *White's Liquor Mart, Inc.* v. *Alcoholic Beverages Control Commn.* 350 Mass. 11. The instant petition thus appears to be directed at a nonadjudicatory procedure of the commission. The demurrer to the petition for review should have been sustained.

## The Suit for Declaratory Relief.

The wholesalers characterize the commission's "post-off" policy as a "ruling" which is "a rule or regulation within the meaning of G. L. c. 30A and G. L. c. 138."[2] The wholesalers contend that this "rule or regulation" is "void and of no effect" because it was "not adopted in accordance with statutory procedures."[3] We are not persuaded, however,

[2] General Laws c. 30A, § 1 (5), reads as follows: "(5) 'Regulation' includes the whole or any part of every rule, regulation, standard or other requirement of general application and future effect adopted by an agency to implement or interpret the law enforced or administered by it, but does not include (a) advisory rulings issued under section eight; or (b) regulations concerning only the internal management or discipline of the adopting agency or any other agency, and not directly affecting the rights of or the procedure available to the public or that portion of the public affected by the agency's activities; or (c) regulations concerning the operation and management of state penal, correctional, welfare, educational, public health and mental health institutions and soldiers' homes, or the development and management of property of the commonwealth or of the agency; or (d) regulations relating to the use of public works, including streets and highways, when the substance of such regulations is indicated to the public by means of signs or signals; or (e) decisions issued in adjudicatory proceedings."

[3] The wholesalers point specifically to the failure of the commission to satisfy the notice and hearing requirements of G. L. c. 30A, §§ 2 and 3, to file the rule with the Secretary of State under G. L. c. 30, § 37, and to secure the approval of the Governor under G. L. c. 138, §§ 24 and 71. Under G. L. c. 138, § 25C (d), as amended by St. 1963, c. 258, if the "rule or regulation" complained of were an act of the commission approving or disapproving filed prices, no compliance with these provisions would be necessary (with the exception of G. L. c. 30, § 37).

that the commission has formulated a rule or regulation within the meaning of the statutes. The existing procedure has been for the commission to elicit wholesale prices and on the basis of these to compute an average markup for retailers and set a minimum retail price. The wholesale prices are submitted on a monthly basis while the retail prices are set for a two months period. G. L. c. 138, §§ 25B and 25C. The long standing industry practice has been for the wholesalers to reduce certain prices ("post-off") in the second month of the retail price period. These reductions are not reflected by any change in the minimum retail prices. The commission has now decided that the purpose of setting a minimum retail price on the basis of wholesale cost plus a fair markup can only be fulfilled by taking fluctuations in the wholesale price into account. We believe that this decision can reasonably be characterized as a reinterpretation of the reasoning behind the application of existing rules. While it is often difficult to draw a clear and objective line between a regulation and the reasoning behind it, here the commission's efforts to rationalize existing procedures fall outside the definition of a rule or regulation in G. L. c. 30A, § 1 (5).

The parties point out that there is a contradiction between the one month price period of G. L. c. 138, § 25B, and the two months period of G. L. c. 138, § 25C. The wholesalers seek to draw evidence from this of a legislative intent to permit variations in the wholesale prices which would not have to be reflected in the retail prices. It is our duty to interpret the statute, if possible, so "as to make it an effectual piece of legislation in harmony with common sense and sound reason." *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492. *Johnson's Case,* 318 Mass. 741, 746. *Massachusetts Turnpike Authy.* v. *Commonwealth,* 347 Mass. 524, 528. *Children's Hosp. Medical Center* v. *Boston, ante,* 228, 233. General Laws c. 138, § 25C (d), provides that the commission shall approve minimum retail prices only if they are not "excessive, inadequate, or unfairly discriminatory." We do not believe that the commission can rationally apply such a standard if it cannot know what

the wholesale prices will be. We are of opinion, therefore, that the commission is acting in accordance with the statute when it seeks to take "post-offs" into account in setting retail prices. Since the decision complained of is not a rule or regulation in the statutory sense, it follows that it is not "void and of no effect" because of lack of compliance with the procedural requirements for the promulgation of a rule or regulation.

The wholesalers appear to maintain that "post-offs" in later months of MCRP periods do not render the minimum retail prices "excessive, inadequate, or unfairly discriminatory," because the markup over the first month's wholesale prices is calculated with the awareness that "post-offs" will be subsequently given. We believe that if the so called "historical markup" is shown to be inadequate because of the required adjustment in the retail prices as a result of the "post-offs," the retailers may raise this issue in connection with any future determination of minimum consumer retail prices. If it then appears that the commission is acting arbitrarily and capriciously and refuses to approve prices which are not "excessive, inadequate, or unfairly discriminatory," review of the commission's actions may be sought in another proceeding.

The interlocutory decree overruling the demurrer to the petition for review is reversed and a new decree is to be entered sustaining the demurrer. In each of the cases, the final decree is reversed. A final decree is to be entered in the proceeding for review dismissing the petition. A final decree is to be entered in the suit for declaratory relief declaring the commission's new "post-off" policy to be valid.

*So ordered.*