TOWN OF HADLEY *vs.* TOWN OF AMHERST & others.[1]

Hampshire.    December 9, 1976. — February 22, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Amherst. Hadley. Municipal Corporations,* "Home rule," Sewers. *Statute,* General statute. *Practice, Civil,* Declaratory relief. *Eminent Domain,* Authority for taking.

A statute, enacted in 1912, authorizing a town to take or acquire lands, rights of way and easements in connection with the construction and operation of a sewer system dealt with a matter "of State, regional, or general concern" within the meaning of § 8 of the Home Rule Amendment to the Massachusetts Constitution and thus was unaffected by the other provisions of the Home Rule Amendment. [48-50]

In an action to determine the continuing effectiveness of St. 1912, c. 484, authorizing the town of Amherst to take or acquire lands, rights of way and easements in Amherst and Hadley in connection with the construction and operation of a sewer system, subsequent enactments empowering the University of Massachusetts to convey part of its land in Hadley to Amherst for use in the sewer system did not evidence a legislative intent to limit the statute's application only to the original taking in 1913 [50-51]; nor did a provision in the statute prescribing the maximum amount of indebtedness which Amherst was permitted to incur outside its authorized debt limit in the construction of the system evidence such an intent [51-52].

---

[1] The other named defendants include the Board of Sewer Commissioners of Amherst, the County of Hampshire, the Treasurer of Hampshire County, the Attorney General, and the Trustees of the University of Massachusetts.

CIVIL ACTION commenced in the Superior Court on July 19, 1974.

The case was heard by *Griffin, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Elizabeth A. Porada* for the plaintiff.

*Stephen R. Kaplan (John F. Murphy, Jr.,* with him) for the town of Amherst.

LIACOS, J.    In 1912, the Legislature authorized the town of Amherst to "lay out, construct, maintain and operate a system or systems of main drains and common sewers." St. 1912, c. 484, § 1. The act further provided that the board of sewer commissioners "shall have the power to take or acquire by purchase or otherwise, any lands in fee and any water rights, rights of way and easements ... in said towns of Amherst and Hadley, necessary for any of the purposes mentioned in this act." St. 1912, c. 484, § 2.

On July 10, 1974, Amherst recorded an order of taking for easements in certain public and private ways in the town of Hadley for the purpose of constructing a thirty-six inch sewer main. As a result of this action, Hadley brought suit in the Superior Court pursuant to G. L. c. 231A, seeking a declaration that the statute in question no longer had any continuing effect, that the order of taking was invalid and illegal, and further seeking an injunction against the installation of the proposed sewer line.

During the pendency of the litigation in the Superior Court previously unsuccessful negotiations between the two parties seeking an amicable, nonjudicial resolution of the controversy came to fruition. A stipulation was filed on August 2, 1974, informing the court of a settlement of the immediate dispute as well as a waiver of the claim for injunctive relief. The parties stipulated, however, to the continuing existence of an actual controversy and renewed the request for declaratory relief. They did so on the basis that there would probably exist future occasions on which

the town of Amherst would seek to assert the power at issue in this case.

The case was submitted on the basis of stipulated facts. After consideration, the trial judge ruled that the authority given in St. 1912, c. 484, "is a continuing authority and was not exhausted by the original takings in 1913-1915."[2] Hadley filed a claim of appeal in the Appeals Court. We transferred the case here on our own motion.

At oral argument before this court the plaintiff waived any issues concerning the validity of the order of taking or whether the act authorized the taking of public as well as of private lands. The only issues remaining for decision are whether St. 1912, c. 484, is still a valid and continuing grant of power to the town of Amherst and, if so, the limits of that power in the future. We agree with the Superior Court judge and hold that the power granted to Amherst in St. 1912, c. 484, was not exhausted by the original taking.

1. A threshold issue has been asserted by the plaintiff's argument, which assumes arguendo the continuing validity of St. 1912, c. 484, but argues nonetheless that the extraterritorial effect of the act has been rendered nugatory by the provisions of § 9 of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, supplanting art. 2 of those Amendments.[3] The

---

[2] Amherst's first action under the statute occurred in April, 1913, when it made the original taking necessary for the construction of the system. Between that time and 1915 Amherst installed a twelve inch sewer main through Hadley. In 1939, it constructed a sewage disposal plant on land conveyed by Massachusetts State College, now the University of Massachusetts, pursuant to a legislative enactment. St. 1938, c. 454. In 1963, it constructed a twenty-one foot sewer main near the original main on Hadley land, but no controversy arose due to a series of apparently successful negotiations. Most recently, in 1972, the Legislature authorized the university to convey additional land to Amherst for expansion of the sewage plant first erected in 1939. St. 1972, c. 726. The above constitute the history of the actions taken pursuant to or in relation to the matter here at issue. The relevance of the above cited legislative enactments is discussed *infra* at 50-51.

[3] Section 9 provides: "All special laws relating to individual cities or towns shall remain in effect and have the force of an existing city or town charter, but shall be subject to amendment or repeal through the adoption, revision or amendment of a charter by a city or town in ac-

plaintiff argues that the provision of § 9 limits the force
and effect of the act to that enjoyed by a town by-law,
effective only within the boundaries of Amherst. The issue,
otherwise stated, is whether St. 1912, c. 484, is a special
act within the meaning of art. 89, § 9. If so, it would have
the effect attributed to it by the plaintiff. If not, it is a
general law within the power of the Legislature to act in
relation to cities and towns under § 8 of the Home Rule
Amendment, art. 89 of the Amendments to the Constitu-
tion of the Commonwealth.[4]

Said § 8 provides that the Legislature retains "the power
to act in relation to cities and towns ... by general laws
which apply alike to all cities, or to all towns, or to all

---

cordance with the provisions of sections three and four and shall be
subject to amendment or repeal by laws enacted by the general court
in conformity with the powers reserved to the general court by section
eight."

[4] Section 8 provides: "The general court shall have the power to act
in relation to cities and towns, but only by general laws which apply
alike to all cities, or to all towns, or to all cities and towns, or to a class
of not fewer than two, and by special laws enacted (1) on petition filed
or approved by the voters of a city or town, or the mayor and city
council, or other legislative body, of a city, or the town meeting of a
town, with respect to a law relating to that city or town; (2) by a two-
thirds vote of each branch of the general court following a recommen-
dation by the governor; (3) to erect and constitute metropolitan or
regional entities, embracing any two or more cities or towns, or estab-
lished with other than existing city or town boundaries, for any general
or special public purpose or purposes, and to grant to these entities
such powers, privileges and immunities as the general court shall deem
necessary or expedient for the regulation and government thereof; or
(4) solely for the incorporation or dissolution of cities or towns as
corporate entities, alteration of city or town boundaries, and merger or
consolidation of cities and towns, or any of these matters.

"Subject to the foregoing requirements, the general court may pro-
vide optional plans of city or town organization and government under
which an optional plan may be adopted or abandoned by majority vote
of the voters of the city or town voting thereon at a city or town elec-
tion; provided, that no town of fewer than twelve thousand inhabitants
may be authorized to adopt a city form of government, and no town of
fewer than six thousand inhabitants may be authorized to adopt a form
of town government providing for a town meeting limited to such in-
habitants of the town as may be elected to meet, deliberate, act and
vote in the exercise of the corporate powers of the town.

"This section shall apply to every city and town whether or not it
has adopted a charter pursuant to section three."

cities and towns, or to a class of [towns] not fewer than
two . . . ." However, we have said that the words "to act
in relation to cities and towns," do not preclude the Legis-
lature "from acting on matters of State, regional, or gen-
eral concern, even though such action may have special
effect upon one or more individual cities or towns." *Opinion
of the Justices,* 356 Mass. 775, 787-788 (1969). It seems
clear that, like the matter of water supply which was
stated to fall within the ambit of retained legislative power
in *Opinion of the Justices,* 357 Mass. 831, 835 (1970),
sewer systems, with their effect on water quality in a
particular area, are a matter of State, regional, or general
concern, and thus an area in which the Legislature re-
tained law-making authority. *Director of the Div. of Water
Pollution Control* v. *Uxbridge,* 361 Mass. 589, 593-594
(1972). It is our conclusion that the 1912 act is unaffected
by the provisions of the Home Rule Amendment.

2. There is no express time limitation on the power
granted to Amherst contained in the text of the 1912 act
itself. The plaintiff has attempted to overcome this ob-
stacle by arguing that if the act in question is read in
harmony with subsequent legislative enactments it be-
comes clear that the act was meant to apply only to the
original taking in 1913. A second argument asserted by
the plaintiff is that the conclusion it urges is inescapable
if we construe all the provisions of the act itself harmoni-
ously. It argues that the express funding limitation of
$60,000 contained in § 5 of the act demonstrates a legisla-
tive intent to limit the operation of all the act's provisions
to the single taking necessary to establish the sewer sys-
tem authorized. We consider these arguments separately.

A. The plaintiff has brought to our attention two acts
of the Legislature enacted subsequent to the act at issue
here which it claims would be superfluous if St. 1912, c. 484,
was a continuing grant of authority. Hadley argues, as a
result, that these subsequent enactments indicate that the
Legislature did not intend St. 1912, c. 484, to be a grant
of continuing power.

Both of the enactments referred to by the plaintiff empower what is now the University of Massachusetts to convey part of its land in Hadley to Amherst for use in the sewer system. The first such enactment, St. 1938, c. 454, provides little support for the plaintiff's argument in light of the fact that the text of that act refers to St. 1912, c. 484, a fact which indicates that the Legislature felt that both enactments could stand in harmony. While the second enactment, St. 1972, c. 726, does not have a similar provision we do not find this in any way conclusive.

As a starting point for our analysis we assume, as we must, that the Legislature was aware of the existing statutes in enacting the above legislation, *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957), and that if possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law. *Everett* v. *Revere*, 344 Mass. 585, 589 (1962). In this vein, the judge below noted that while the language in § 2 of the act grants Amherst a continuing authority to take land from Hadley, no such power is enumerated with respect to what is now the University of Massachusetts. Later enactments would be required to allow Amherst to obtain lands from the university which the town was not authorized to take under the original act. Such an interpretation results in a harmonious body of law and explains the subsequent enactments.

B. The plaintiff argues that St. 1912, c. 484, § 5, limits to $60,000 the amount of indebtedness which Amherst may incur in the construction of the system. The plaintiff claims that this limited sum is indicative of a legislative intent to limit the operation of the act to the taking of land necessary for the construction of the original system. The argument overlooks the import of the cited provision. It is true that § 5 does authorize such indebtedness to a limit of $60,000, but the same section also states that "the debt and loan authorized by this act ... shall not be reckoned in determining the statutory limit of indebtedness of the town."

The above quoted language, when examined in the context of the law applicable to municipal finance at the time the act was passed, does little to support the plaintiff's position. Under R. L. 1902, c. 27, § 4, it was provided that "[a] town shall not become indebted in an amount exceeding three per cent on the last preceding valuation, for the assessment of taxes, of the taxable property therein." (For the current provision see G. L. c. 44, § 10.) Moreover, it was not until St. 1913, c. 719, that cities and towns were authorized to borrow in excess of their statutory limit. Even then, such excess borrowing was not authorized for the purposes of the matter at issue in this case. (Such authority was not granted until St. 1964, c. 736, now G. L. c. 44, § 8 [15].) Thus, given the limitation to which the town was subject at the time of the passage of the act, it is clear that § 5 was necessary to allow Amherst to borrow sufficient funds in excess of its authorized debt limit.

Viewed in this context, § 5 of the act cannot be viewed as imposing other limitations on the power of Amherst. Rather, it is simply what it purports to be, a provision which authorized Amherst to incur indebtedness in excess of its authorized authority at the time of passage. It did not limit future spending on the system, nor did it purport to set the outer limit of the amount of money which could be spent on the system. We do not believe that § 5 provides support for the plaintiff's claim of a legislative intent to limit the power of Amherst with respect to taking lands in the town of Hadley.

3. We have also been asked to define the limits of the powers granted in St. 1912, c. 484, for future instances. This we decline to do. While the purpose of the declaratory judgment act is "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations . . .," G. L. c. 231A, § 9, such matters must be resolved with the normal tools available for judicial resolution of legal controversies. In the absence of a concrete fact situation, any ruling as to the extent of the power granted is likely to be either too narrow or too broad. Cf. *Spaulding* v. *Morse*, 322 Mass. 149, 154

(1947); *Cole* v. *Chief of Police of Fall River,* 312 Mass. 523, 526 (1942), appeal dismissed, 319 U.S. 581 (1943).

*Judgment affirmed.*