NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-28

PAUL C. NORDBERG

vs.

COMMISSIONER OF THE DEPARTMENT OF YOUTH SERVICES & another.[1,2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Paul Nordberg, filed an amended complaint under G. L. c. 231A seeking a declaratory judgment against the defendants. He claimed that legislative appropriations during several consecutive fiscal years mandated salary increases for teachers employed by a vendor of the Department of Youth Services (DYS). On cross motions for summary judgment, a Superior Court judge allowed the defendants' motion and denied Nordberg's motion. Nordberg appeals, and we affirm.

---

[1] Secretary of the Executive Office for Administration and Finance.

[2] The Commonwealth was a named defendant on the original complaint but was dismissed as a defendant in prior proceedings. See Nordberg v. Commonwealth, 96 Mass. App. Ct. 237, 245 (2019).

Background.  Created in 1969, DYS is one of numerous departments within the Executive Office of Health and Human Services (HHS).  G. L. c. 6A, § 16; G. L. c. 18A, § 1; St. 1969, c. 838, § 1.  Since 2005, Nordberg has been an English, history, and life skills teacher employed by Collaborative for Educational Services (CES), a vendor that provides education programs for students in DYS custody.  In 2005, the Legislature approved a fiscal year 2006 budget for HHS and included a separate line item appropriating $2,550,000 "[f]or salary increases for department of youth services' teachers."  St. 2005, c. 45, § 2.  As a result of this single pay raise, and the implementation of a salary schedule, teachers in DYS facilities received salary increases ranging from 3.3 percent to 53.5 percent, with an average salary increase of about $15,000. Around 2008, the Service Employees International Union began representing teachers (including Nordberg) through a collective bargaining agreement with CES.  The collective bargaining agreement includes a salary schedule.

Between fiscal years 2007 through 2024, the annual State budget has included a line item related to DYS teacher pay that has varied from $2,500,000 to $3,154,187.  For fiscal years 2007 and 2008, the Legislature directed these sums "shall be expended to address the salaries of teachers," St. 2006, c. 139, § 2, and "shall be expended for the annualization of enhanced salaries

2

for teachers." St. 2007, c. 61, § 2. In fiscal year 2009, the Legislature directed that these sums shall be expended for the "enhancement" of teacher salaries. St. 2008, c. 182, § 2. From fiscal year 2010 through 2024, the Legislature directed that these sums shall be used for "enhanced" teacher salaries. See, e.g., St. 2009, c. 27, § 2.

In 2017, Nordberg filed his initial complaint (amended in 2022) for a declaratory judgment. With respect to fiscal years 2015 through 2022, he sought a declaration that the appropriations required DYS to pay CES the amount indicated to increase the overall salary schedule every year. Based on the undisputed facts set forth above, Nordberg argued in his summary judgment motion that the Legislature intended the appropriations as annual "pay raises" for the teachers. In a cross motion for summary judgment, the defendants argued that the annual appropriations merely sustained the original pay increase implemented in fiscal year 2006. The judge agreed with the defendants and noted that Nordberg's interpretation would call for an absurd result of an unbroken line of annual pay raises over nearly twenty years.

Discussion. We apply de novo review to a decision on a summary judgment motion. See Metcalf v. BSC Group, Inc., 492 Mass. 676, 680 (2023). Summary judgment is appropriate where there is no material issue of fact in dispute and the moving

3

party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  Traditional rules of statutory construction apply when reviewing a line item in a legislative appropriation.  See Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 851 (2004).  "Where, as here, we are called to construe the terms of a statute and its applicability, we begin with the statute's plain language."  Metcalf, 492 Mass. at 681.  "[I]f possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law."  Hadley v. Amherst, 372 Mass. 46, 51 (1977).  We must always construe "legislation in harmony with common sense and sound reason."  Atlas Distrib. Co. v. Alcoholic Beverages Control Comm'n, 354 Mass. 408, 414 (1968), quoting Morrison v. Selectmen of Weymouth, 279 Mass. 486, 492 (1932).

Here, the plain language of the legislation indicates an effort to honor a commitment made in 2005 to increase teacher salaries.  Starting in fiscal year 2006, the Legislature authorized $2,550,000 "[f]or salary increases for department of youth services' teachers."  St. 2005, c. 45, § 2.  This appropriation funded widespread pay raises averaging about $15,000 and implemented a salary schedule.  Around 2008, the Service Employees International Union began representing teachers through a collective bargaining agreement that

4

ultimately included a salary schedule that reflected the pay raises.  Based on this sequence of events, the Legislature logically had to appropriate sufficient resources on an annual basis (varying between $2,500,000 to $3,154,187) to fund the salary schedule that had been augmented by the initial infusion of $2,550,000 in pay raises for fiscal year 2006.  In his brief, Nordberg suggests language that he believes would better articulate legislative goals, but he is not entitled to relief merely because the Legislature could have utilized alternative funding methods or more precise language in the annual budget process.  Such alternatives are within the prerogative of the Legislature, especially where budgetary "appropriation is exclusively a legislative power."  Opinion of the Justices, 375 Mass. 827, 833 (1978).

We disagree with Nordberg's contention that the annual appropriations stand as independent directives from the Legislature to raise the pay of DYS teachers.  For example, he points to the language in the annual appropriations requiring that funds shall be used for the "enhancement" of teacher salaries, St. 2008, c. 182, § 2, and shall be used for "enhanced" teacher salaries.  See, e.g., St. 2009, c. 27, § 2.  In his view, this language bespeaks an intent to increase salaries and not just maintain salaries.  We disagree.  Such an interpretation would require us to view the statutory language

5

in isolation and thereby disregard two fundamental rules of statutory construction. First, whenever possible, "a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law." Hadley, 372 Mass. at 51. As previously discussed, the appropriations indicate a single and widespread salary increase in fiscal year 2006 that has been consistently funded in annual budgets through fiscal year 2024. Second, "[r]eading in language that the Legislature chose to remove . . . impermissibly interferes with the legislative function." Kenniston v. Department of Youth Servs., 453 Mass. 179, 185 (2009). In 2006, the Legislature chose the phrase "salary increases" to raise teacher salaries, St. 2005, c. 45, § 2, and did not use that language thereafter. Thus, we cannot view "salary increases" as synonymous with later funding language such as "enhancements" or "enhanced" salaries.

Finally, Nordberg's interpretation is not plausible and lacks "harmony with common sense and sound reason." Atlas, 354 Mass. at 414, quoting Morrison, 279 Mass. at 492. If Nordberg's view is correct, that each annual appropriation constitutes a new pay raise, then the average raise of $15,000 in fiscal year 2006 would have to be repeated every year through fiscal year 2024 -- $285,000 in average pay increases over eighteen years -- a facially absurd result. In his brief and oral argument, Nordberg downplayed this evident absurdity by asserting that his

6

complaint is only limited to four of those fiscal years, and a successful declaratory judgment would result in more modest pay increases. Common sense, however, cannot be cabined to just a handful of fiscal years to achieve a desired result. Canons of statutory construction require us to review the entire statutory scheme, not just cherry-picked portions.

<u>Judgment affirmed</u>.

By the Court (Vuono,
  Englander & Hodgens, JJ.[3]),

Clerk

Entered: January 13, 2025.

---

[3] The panelists are listed in order of seniority.

7